671 F.2d 737
 109 L.R.R.M. (BNA) 3102, 93 Lab.Cas. P 13,306
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
CABLEVISION SYSTEMS DEVELOPMENT COMPANY and Atlantic Cable
Television Services Corporation, Respondents.
International Brotherhood of Electrical Workers Local Union
25 (Local 25), Intervenors.
 No. 167, Docket 81-4067.
 United States Court of Appeals,
Second Circuit.
 Submitted Oct. 28, 1981.
Decided March 2, 1982.
 
 Sandra Shands Elligers, N.L.R.B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., of counsel), for petitioner.
 William H. Englander, Mineola, N. Y. (Cooper, Englander & Sapir, P. C., Mineola, N. Y.), for respondents.
 
 
 1
 Richard S. Brook, Garden City, N. Y. (Elihu I. Leifer, Robert D. Kurnick, Sherman, Dunn, Cohen, Leifer & Counts, P. C., Washington, D. C.), for intervenor, Local 25, Intern. Broth. of Elec. Workers, AFL-CIO.
 
 
 2
 Before MOORE and NEWMAN, Circuit Judges, and GRIESA,* District Judge.
 
 GRIESA, District Judge:
 
 3
 This is an application by the National Labor Relations Board for enforcement of an order issued against Cablevision Systems Development Company and its wholly-owned subsidiary, Atlantic Cable Television Services Corporation. Local 25, International Brotherhood of Electrical Workers, AFL-CIO, has intervened in support of the Board's order. The Board ruled that Cablevision and Atlantic are required to bargain with Local 25. The Board based its ruling on the ground that Cablevision and Atlantic are successors to the obligations of a previous contractor and, alternatively, on the ground that respondents had at one time voluntarily recognized Local 25. We enforce the Board's order on the first ground and deem it necessary to discuss only the issue whether the Board properly applied the so-called "successorship" doctrine.
 
 I.
 
 4
 Cablevision is a partnership engaged in the development, maintenance and operation of cable television in New York and New Jersey. Prior to July 1, 1977 Cablevision subcontracted certain of its Long Island operations to Broadway Maintenance Corporation. The subcontracted operations were the installation of cables and receiver units at the customers' premises, and the subsequent maintenance of this equipment. The installation and maintenance employees of Broadway were represented by Local 25.
 
 
 5
 In 1977 Cablevision decided to terminate the contract with Broadway. The contract between Cablevision and Broadway ended June 30. Cablevision formed Atlantic to take over the installation and maintenance operations on Long Island, and Atlantic started business on July 1. Most of the employees of Atlantic when it commenced operation (48 out of 53) were former Broadway employees. The 48 employees performed the same jobs for Atlantic as they had formerly performed for Broadway, although as time passed they were "cross-trained" to perform certain additional duties.
 
 
 6
 Local 25 sought to bargain with Cablevision and Atlantic on behalf of the Atlantic installation and maintenance employees, as it had done with Broadway. Although discussions were held, Cablevision and Atlantic ultimately took the position that there was no duty to bargain with Local 25, which then filed an unfair labor practice charge with the Board.
 
 
 7
 The Board (treating Cablevision and Atlantic as one employer) ruled that Cablevision had violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5), by refusing to bargain with Local 25. The Board found that the 53 employees of Atlantic were an appropriate bargaining unit and that Local 25 was their proper representative. In reaching its conclusion the Board determined that Cablevision was a successor employer to Broadway.
 
 II.
 
 8
 Section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." An employer who acquires the business of another must, under certain circumstances, recognize and bargain with the union representing the predecessor's employees. Several factors have been mentioned in the cases as warranting the application of this rule, among the most important being that a majority of the employees in the bargaining unit of the successor is carried over from the predecessor and continues to perform essentially the same duties. Saks & Co. v. NLRB, 634 F.2d 681, 684, 686 (2d Cir. 1980); see NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 278-79, 92 S.Ct. 1571, 1577, 32 L.Ed.2d 61 (1972); NLRB v. Hudson River Aggregates, Inc., 639 F.2d 865, 869 (2d Cir. 1981).
 
 
 9
 It is difficult to imagine a clearer case for the application of the successorship doctrine than the present one, where the change of employer represents merely a recapture of an operation previously performed by an independent contractor. The great bulk of Atlantic's employees was carried over from Broadway, and the former Broadway employees continued to perform basically the same work as before.
 
 
 10
 In the Burns case, supra, the Supreme Court applied the successorship rule to a situation where one contractor replaced another contractor. In Saks, supra, the rule was applied to the recapture of an operation previously performed by a contractor. There, Saks had contracted certain of its alteration work in Pittsburgh to Gimbels. Saks later decided to open its own alteration department, and terminated its arrangement with Gimbels. A majority of the employees in the new Saks operation was taken over from Gimbels and continued to perform the same basic tasks after the change. See also NLRB v. Middleboro Fire Apparatus, Inc., 590 F.2d 4 (1st Cir. 1978) (contractor successor to a principal).
 
 
 11
 Cablevision seeks to distinguish Burns and Saks on the ground that in those cases the predecessor and successor employers were in the same business (i.e., Saks and Gimbels were retail department stores) whereas, in the present case, the overall business of Cablevision is quite different from that of Broadway. However, the relevant comparison is not between Cablevision and Broadway on a total basis, but between the specific operations involving the union members. The "essential inquiry is whether operations, as they impinge on union members, remain essentially the same after the transfer" to the new employer. IUEW v. NLRB, 604 F.2d 689, 694 (D.C.Cir.1979); NLRB v. Hudson River Aggregates, Inc., supra at 869.
 
 
 12
 In the present case the operation, insofar as it affects the union members, is the installation and maintenance of Cablevision equipment on Long Island. This operation was essentially the same after Cablevision took it over as it had been under Broadway.
 
 
 13
 We grant the Board's petition for enforcement of its order.
 
 
 
 *
 The Honorable Thomas P. Griesa of the United States District Court for the Southern District of New York, sitting by designation