815 F.2d 517
 125 L.R.R.M. (BNA) 2332, 55 USLW 2656,
107 Lab.Cas. P 10,074
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
EASTERN CONNECTICUT HEALTH SERVICES, INC., d/b/a New London
Convalescent Home, Respondent.
New England Health Care Employees Union, District 1199,
National Union of Hospital and Health Care
Employees, AFL-CIO, Intervenor.
 No. 1018, Docket 87-4004.
 United States Court of Appeals,
Second Circuit.
 Argued March 24, 1987.
Decided April 8, 1987.
 
 Barbara A. Atkin (Michael David Fox, of counsel, Rosemary M. Collyer, John E. Higgins, Jr., Robert E. Allens, Elliott Moore, Washington, D.C., on the brief), for petitioner.
 Michael R. Miller (Kunkel & Miller, Sarasota, Fla., of counsel), for respondent.
 Miriam L. Gafni (Freedman & Lorry, Philadelphia, Pa., of counsel), for intervenor.
 Before KAUFMAN, PIERCE and PRATT, Circuit Judges.
 PER CURIAM:
 
 
 1
 The National Labor Relations Board petitions for enforcement of its supplemental order dated September 30, 1986 requiring respondent Eastern Connecticut Health Services, Inc., owner of a nursing home in New London, Connecticut (the "employer"), to bargain with the entity now known as New England Health Care Employees Union, District 1199, National Union of Hospital and Health Care Employees, AFL-CIO (the "union").
 
 
 2
 While the employer's defenses to the petition are numerous, each of them is plainly lacking in merit under settled precedent. Certainly, the employer has adduced no reasons which would suffice for us to overturn the "wide degree of discretion" that the Board enjoys in resolving representation matters. See NLRB v. A.J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); NLRB v. Semco Printing Center, Inc., 721 F.2d 886, 892 (2d Cir.1983).
 
 
 3
 At the time of the certification election, the union was affiliated with the AFL-CIO through the Retail, Wholesale, and Department Store Union and the nursing home was owned by a predecessor employer. Subsequently, the union changed its affiliation and is now affiliated with the AFL-CIO directly. The employer argues that as a result of this change there must be a new certification election.
 
 
 4
 Under the standards set forth by the Supreme Court in NLRB v. Financial Institution Employees Local 1182, 475 U.S. 192, 106 S.Ct. 1007, 89 L.Ed.2d 151 (1986) ("Sea-First"), the employer's contention must be analyzed in two parts. First, there must be a finding that the union's new affiliation "substantially change[d] a certified union's relationship with the employees it represents." If so, the second inquiry is whether "it is unclear whether a majority of employees continue to support the reorganized union," id., 106 S.Ct. at 1013. In this case, the Board's detailed findings of fact following a hearing amply warrant its conclusion that the first part of this test has not been met here.
 
 
 5
 In any event, the facts alleged by the employer do not suffice to raise a substantial question as to the second part of the test. The employer complains that non-members of the union were not permitted to vote on the organizational changes. A union may properly limit voting on such questions to its members, Sea-First, 106 S.Ct. at 1014, 1017, and the fact that this may disenfranchise some of the employees of the bargaining unit is of no consequence; those employees were free to join the union if they wished to participate in its internal affairs.
 
 
 6
 Similarly, since the affiliation decision was primarily an internal matter for the union, id., 106 S.Ct. at 1015-16, no question of representation is raised by the union's decision not to require unit-by-unit approval of the changes, or its delegation of parts of the process to its executive board. Neither these union procedures, nor any of the claimed irregularities in the way in which the referendum on the new affiliation was conducted, resulted in a denial of the essential elements of due process. Indeed, the record supports the finding of the Board that the union affirmatively sought to insure that all eligible workers wishing to vote had the opportunity to do so.
 
 
 7
 The employer's next series of claims concerns its contention that "unusual circumstances", in the form of alleged union misconduct, exist here and suffice to rebut the ordinary presumption that a union retains majority support for a year following certification. See Brooks v. NLRB, 348 U.S. 96, 98, 75 S.Ct. 176, 178, 99 L.Ed. 125 (1954); Glomac Plastics, Inc. v. NLRB, 592 F.2d 94, 98 n. 3 (2d Cir.1979). Particularly since the Board is entitled to view such claims with skepticism when made by employers rather than employees, see Retired Persons Pharmacy v. NLRB, 519 F.2d 486, 490 (2d Cir.1975), the instances of misconduct alleged by the employer--the brief occupation of an administrative office, and a single instance of assertedly illegal picketing--do not rise to the level of egregiousness which would warrant us in concluding that the Board abused its discretion in requiring the employer to bargain with the union.
 
 
 8
 The employer's claim that there was such abuse is based on its contention that the instances of claimed union misconduct cost the union its majority support. Even if true, that allegation would not establish "unusual circumstances" justifying a refusal to bargain. See NLRB v. Lee Office Equipment, 572 F.2d 704, 706-07 (9th Cir.1978).
 
 
 9
 The employer next makes several procedural attacks on the Board proceedings. None have merit. The Board's decision to deny the employer intervention in the administrative proceedings while it was still only a prospective purchaser of the nursing home at issue was well within the Board's authority.
 
 
 10
 Similarly, there was no abuse of discretion in holding that the employer was bound by a stipulation as to the appropriate bargaining unit entered into by its predecessor in interest. The bargaining obligations of successor employers are well established, see NLRB v. Cablevision Systems Development Co., 671 F.2d 737, 739 (2d Cir.1982), and the employer's duties under an agreement voluntarily entered into by its predecessor are in no way diminished because the predecessor might arguably have litigated the matter successfully or because the employer assertedly could do so now. Accordingly, the Board was not required to provide an articulation of why the bargaining unit stipulated to by the employer's predecessor met the standards laid down in contested cases.
 
 
 11
 Having examined each of the employer's contentions, and finding all of them to be meritless, we hold that the Board is entitled to enforcement of its supplemental order.