NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LEE OFFICE EQUIPMENT, Respondent.

No. 77–1262.

United States Court of Appeals,
Ninth Circuit.

March 30, 1978.

Elliott Moore, Deputy Assoc. Gen., Washington, D. C., for petitioner.

Norman H. Kirshman, of Nelson, Kirshman, Goldstein & Rexon, Los Angeles, Cal., for respondent.

Before BROWNING and WALLACE, Circuit Judges, and WATERS,* District Judge.

WALLACE, Circuit Judge:

The Board seeks enforcement of its remedial Order issued in response to the employer's refusal to bargain in good faith as it is required to do by the National Labor Relations Act. We concur in the Board's conclusion that the employer breached this statutory duty and we, therefore, enforce the Board's Order.

I

On April 11, 1975, the National Labor Relations Board (Board) conducted a representation election for a bargaining unit consisting of approximately ten of Lee Office Equipment's (Company) employees. As a result, a local of the International Brotherhood of Teamsters (Union) was certified as the unit employees' collective bargaining representative. Negotiations between the Company and Union commenced shortly after certification and continued sporadically through September 1975.

On some undetermined date, employee Woolf, a unit member, wrote to the Union stating that he and his fellow employees no longer desired to be represented by the Union. On August 15, 1975, employee Collier, another member of the bargaining unit, wrote to the Union indicating that he did not desire to be represented by the Union. Finally, on September 16, 1975, employees Lentz, Cash and Woolf, all of whom were unit employees, jointly wrote to the Union ostensibly resigning membership in the Union and indicating their desire no longer to be represented by the Union.

A few days after receiving the September 16 letter, Dambro, the Union's "business agent," encountered Woolf at the union hall. Dambro told Woolf that the letters would be fruitless and that Woolf should get the employees to rescind their letter and to support the Union. Dambro punctuated his demand with a threat. On September 29, Dambro telephoned Woolf and substantially repeated the same remarks.

On September 30, 1975, the final bargaining meeting between the Company and Union was held. In addition to the negotiators, the meeting was also attended by four of the employees. During the meeting, the Union's representatives refused to allow the employees to speak and the Company's agents refused to proceed unless the employees were permitted to do so. As a result, the meeting was hastily concluded without substantive negotiations. On two occasions during October 1975, the Union requested and the Company refused to resume negotiations.

On October 28, 1975, the Union filed unfair labor practice charges alleging that the Company's refusals to resume bargaining violated sections 8(a)(5) and (1) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(5) and (1). The Board, in agreement with its administrative law judge, concluded that the Company had in fact violated sections 8(a)(5) and (1). The Company now renews several of its contentions and defenses. We agree with the Board that none of the Company's arguments entitles it to prevail.

* Honorable Laughlin E. Waters, United States District Judge, Central District of California, sitting by designation.

## II

The Company's primary contention is that the peculiar facts of this case justify its refusal to bargain with the certified bargaining representative of its employees. We disagree.

The Company acknowledges the general rule that a union enjoys an almost conclusive presumption of majority support during the year following certification.[1] Thus, an employer may not refuse to bargain during that 12-month period even though the employer is confident that the union has lost majority support. *NLRB v. Burns Int'l Security Serv.*, 406 U.S. 272, 279 n.3, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *Brooks v. NLRB*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); *Inter-Polymer Indus., Inc. v. NLRB*, 480 F.2d 631, 633 (9th Cir. 1973); *NLRB v. Holly-General Co.*, 305 F.2d 670, 674 (9th Cir. 1962). The presumption is said to be "almost" conclusive because, as the Supreme Court stated in *Brooks v. NLRB, supra*, 348 U.S. at 98, 75 S.Ct. 176, certain "unusual circumstances" may justify an employer's refusal to bargain even during the certification year.[2]

In the case before us, the Company argues that the Union's total loss of employee support, brought about by the Union's own misconduct, justifies its refusal to bargain during the certification year. The upshot of the Company's argument is that this combination of factors should be deemed to constitute "unusual circumstances" as the Court used that term in *Brooks*.

It appears that the Union had in fact lost virtually all employee support at the time of the refusals to bargain.[3] But evidence that employees have abandoned their certified union, without more, does not justify an employer's refusal to bargain during the certification year. *Brooks v. NLRB, supra*, 348 U.S. at 103, 75 S.Ct. 176; *NLRB v. Holly-General Co., supra*, 305 F.2d at 674.

Moreover, we do not believe that the Company's reliance upon the Union's misconduct greatly enhances its claim that the facts of this case constitute an unusual circumstance. The Company points to two occasions to substantiate this assertion. First, there were some episodes of violence which occurred during strikes and organizational drives in which the Union was participating. As the hearing officer found, however, these incidents involved different employers, occurred two to three years before this dispute, and there was no evidence introduced which established that agents of the Union were responsible for the violence. Second, the Company points to the fact that in June or July of 1974, Dambro, the Union's agent, had suggested to the employees that vandalism would encourage the Company to view the Union's bargaining demands more favorably. The administrative law judge and Board found, however, that there was no evidence in the record to indicate that the Company even knew at the time it refused to bargain about Dambro's suggestion of vandalism or his subsequent threat to Woolf.

In any event, even if we assume that the Company reasonably believed that the Un-

---

1. Section 9(c)(3) of the Act, 29 U.S.C. § 159(c)(3), creates an "election bar" by providing that "[n]o election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held." When the election results in the certification of a union, however, the Board has construed the twelve-month period to run from the date of certification rather than the date of the election. The Supreme Court approved the Board's "certification bar" as "within the allowable area of the Board's discretion in carrying out congressional policy." *Brooks v. NLRB*, 348 U.S. 96, 104, 75 S.Ct. 176, 181, 99 L.Ed. 125 (1954).

2. For example, the Board has acknowledged the existence of "unusual circumstances" where the certified union was dissolved, *Public Serv. Elec. & Gas Co.*, 59 N.L.R.B. 325 (1944), and where the certified union has disclaimed any interest in representing the unit employees, *WTOP, Inc.*, 114 N.L.R.B. 1236 (1955).

3. The administrative law judge found, and the Board agreed, that at the time of the September 30 meeting there were four employees remaining in the bargaining unit. These were the same four employees who had written to the Union asking that the Union not represent them.

ion had been guilty of such misconduct, it was not justified in ignoring its obligation to bargain at least during the balance of the certification year. As we recently held, "[e]ven tortious union tactics do not relieve an employer of the duty to bargain in good faith." *NLRB v. Ramona's Mexican Food Prod., Inc.,* 531 F.2d 390, 394 (9th Cir. 1975). The statutory duty to bargain in good faith, 29 U.S.C. § 158(a)(5), (b)(3), (d), is part of a complex statutory framework, one purpose of which is to protect the "paramount public interest" by minimizing "labor disputes . . . that endanger the public health, safety, or welfare . . .." H.R.Rep.No. 510, 80th Cong., 1st Sess. 1, *reprinted in* [1947] U.S.Code Cong.Serv., p. 1135. Thus, in most cases, additional misconduct by any party to a labor dispute is more likely avoided by scrupulous adherence to the duty to bargain than by its breach.[4]

▮ The Company seems to argue that by being required to abide by the well-established rules discussed above, it is "caught in the middle" between its duty to bargain in good faith on one hand and a union which has incurred open employee antagonism as a result of its own misconduct on the other. This is not so. We do not hold today that the Company was without a remedy; we simply hold that the refusal to bargain was not a permissible course of action. For example, the Board has clearly indicated that under certain circumstances it will entertain an employer's "motion to revoke certification" prior to expiration of the certification year. *See, e.*

g., *Sisters of Charity of Providence,* 225 N.L.R.B. 799 (1976); *Catalytic Indus. Maint. Co.,* 209 N.L.R.B. 641 (1974); *cf. Hughes Tool Co.,* 104 N.L.R.B. 318 (1953). This procedure is precisely that approved by the Court in *Brooks*: "Although the Board may, if the facts warrant, *revoke a certification* or agree not to pursue a charge of an unfair labor practice, these are matters for the Board; they *do not justify employer self-help* or judicial intervention." *Brooks v. NLRB, supra,* 348 U.S. at 103, 75 S.Ct. at 181 (emphasis added). Accordingly, we conclude that if the Company legitimately believed that it was unable to bargain due to the unique facts of this case, it could—and should—have sought relief from the Board without engaging in an unfair labor practice.

### III

▮ The Company's second contention is that the Board's remedial Order is unenforceably vague. The basis of the Company's complaint is that the Board declined to extend the certification year[5] yet nevertheless ordered the Company to meet and bargain in good faith with the Union. In addition, the Board's Decision and Order prohibits the filing of a decertification petition until after the Company as remedied its unfair labor practices.

▮ We do not find this Order to be unenforceably vague. Rather than extend the formal certification period, the Board's

---

**4.** We do not hold that there are no circumstances in which a party's gross misconduct can justify the opposite party's refusal to bargain absent assurances that the misconduct will cease. *See Union Nacional de Trabajadores (Carborundum Co.),* 219 N.L.R.B. 862 (1975), *enforced,* 540 F.2d 1 (1st Cir. 1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977) (unprovoked and pervasive acts of violence, bodily injury and threats of murder justified employer's refusal to bargain without assurances that misconduct would cease). Manifestly, we are presented with no such case here.

**5.** In many cases, the Board, as part of its remedial order, extends the certification bar by the amount of time remaining in the certification

year at the point when the employer illegally refused to bargain. *Mar-Jac Poultry Co.,* 136 N.L.R.B. 785 (1962). Had the Board applied its *Mar-Jac* rule in this case, the Union would have enjoyed its "sheltered" bargaining status for approximately one-half of a year since there were six months remaining of the certification year when the Company refused to bargain. By declining to invoke *Mar-Jac,* yet nevertheless ordering the Company to bargain, the Board's order is construed as requiring the Company to bargain for a reasonable time before the Union's status can be challenged. This decision is well "within the allowable area of the Board's discretion in carrying out congressional policy." *Brooks v. NLRB, supra,* 348 U.S. at 104, 75 S.Ct. at 181.

Order compels the Company to bargain for a reasonable time before a decertification petition will be entertained. If the Company were not required to do so, its prior unfair labor practice would likely go unredressed since, presumably, the employees would immediately file a decertification petition.

Our review of the Board's Order is properly circumscribed by the principle that "[t]he Board's discretion in fashioning remedies which can fairly be said to 'effectuate the policies' of the Act is broad." *NLRB v. Longshoremen's Local 13,* 549 F.2d 1346, 1355 (9th Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 397, 54 L.Ed.2d 279 (1977); *accord, Evergreen Helicopters, Inc. v. NLRB,* 564 F.2d 1293, 1294 (9th Cir. 1977). Thus, while we might agree that the Board's Order might have been more artfully drafted, it is not within our province to disturb the Board's Order on this basis. *See Evergreen Helicopters, Inc. v. NLRB, supra,* 564 F.2d at 1294.

### IV

■ Finally, the Company argues that it was denied a fair administrative hearing as a result of certain alleged procedural irregularities in the consideration of its Application for Taking Depositions. This contention cannot prevail for the reasons we have previously outlined:

> [A] court, on review, of an administrative determination, should take due account of the rule of prejudicial error. Procedural irregularities are not per se prejudicial;

each case must be determined on its individual facts and, if the errors are deemed to be minor and insubstantial, the administrative order should be enforced notwithstanding. Moreover, "the burden of showing that prejudice has resulted" is on the party claiming injury from the erroneous rulings.

*NLRB v. Seine & Line Fishermen's Union,* 374 F.2d 974, 981 (9th Cir.), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261 (1967) (citations omitted); *cf. Hopkins v. United States,* 414 F.2d 464, 470–71 (9th Cir. 1969). The Company has made no showing of prejudice either before the Board or here. Two of the four Union officials whom the Company sought to depose ultimately testified at the hearing. There is no indication in the record that the other two were not also available. The fact that the Company "had a full and fair hearing with ample opportunity to cross-examine [and that] no showing is made of denial of subpoena power to compel attendance of witness[es]," *Electromec Design & Dev. Co. v. NLRB,* 409 F.2d 631, 635 (9th Cir. 1969), leads us to conclude that the Company incurred no prejudice absent an affirmative showing to the contrary.

The Board's Order is ENFORCED.