**SAHARA–TAHOE CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Hotel-Motel-Restaurant Employees & Bartenders Union, Local 86, Hotel & Restaurant Employees & Bartenders International Union, AFL–CIO, Intervenor.**

**No. 77–2415.**

United States Court of Appeals, Ninth Circuit.

Sept. 8, 1978.

Rehearing and Rehearing En Banc Denied Nov. 27, 1978.

William H. Emer (argued), of Parker, Milliken, Clark & O'Hara, Los Angeles, Cal., for petitioner.

Joseph Norelli (argued), Washington, D. C., for respondent.

Geoffrey V. White, Atty. (argued), San Francisco, Cal., for intervenor.

Before TUTTLE,* DUNIWAY and WRIGHT, Circuit Judges.

TUTTLE, Senior Circuit Judge:

Pursuant to 29 U.S.C. § 160(f), Sahara-Tahoe Corporation has petitioned for review of a decision and order of the National Labor Relations Board.[1] The Board has cross-applied for enforcement of its order, and the Hotel-Motel-Restaurant Employees & Bartenders Union, Local 86, has intervened in favor of enforcement. The Board found that the Union enjoyed a presumption of majority support among the petitioner's food and beverage employees arising from voluntary recognition of the Union and that the presumption survived the petitioner's withdrawal from a multi-employer bargaining unit in 1974. Reversing the conclusion of the Administrative Law Judge, the Board found that petitioner's refusal to bargain was not justified by a reasonable doubt, based on objective considerations, that a majority of its food and beverage employees desired representation by the Union. The Board therefore held that petitioner violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act[2] by withdrawing recognition from and refusing to bargain with the Union, and by

---

* Honorable Elbert P. Tuttle, Senior Circuit Judge, Fifth Circuit, sitting by designation.

1. The Board's decision is reported at 229 N.L. R.B. No. 151 (1977).

2. 29 U.S.C. §§ 158(a)(1) and 158(a)(5).

refusing to make available, upon request, a list of employee names and addresses.[3] Petitioner argues on appeal that the presumption of majority support is inapplicable on the facts of this case and that it successfully established the reasonable doubt defense. Upon consideration of the arguments of the parties and of the record, we decide to enforce.

The petitioner, a Nevada corporation doing business as the Sahara-Tahoe Hotel, is engaged in the operation of a combination hotel, bar, restaurant, and gaming casino in Stateline, Nevada. In April 1965 the Hotel became a member of the Reno Employers Council and authorized the Council to represent it in labor matters pertaining to its food and beverage employees. Although the Hotel had no food and beverage employees at the time it joined the Council, it was agreed and understood that upon hiring such personnel the Hotel would become a party to the extant collective bargaining agreement between the Council and the Union. According to petitioner, it thereby entered a "pre-hire collective bargaining agreement" with the Union.[4]

After that agreement expired in November 1965, the Hotel was a party to a series of successive collective bargaining agreements between the Council and the Union. The last such agreement ran from December 1, 1971, until November 30, 1974. Each agreement contained a clause extending voluntary recognition of the Union by the Hotel as the exclusive representative of its food and beverage employees.

3. The original complaint issued by the N.L.R.B. alleged several additional violations. The administrative law judge recommended that these additional allegations be dismissed, and the Board adopted that recommendation. The other alleged violations are not relevant to this appeal.

4. On May 11, 1965, the general manager of the Council advised the Culinary Workers Union Local 45 and the Bartenders Union Local 86, later merged to become the Union, by letters that the Council had been authorized to represent the Hotel. Both of these letters contained the following statement:

On August 2, 1974, the Hotel withdrew from the Council and, on August 5, informed the Union of its willingness to negotiate a separate agreement between the Hotel and the Union. On September 27, 1974, the Hotel filed a petition with the Board seeking a representation election in a single employer unit consisting of its food and beverage employees.[5] On October 29, 1974, the Hotel withdrew its recognition of the Union, stating in a letter to the Union that "we seriously doubt that you represent a majority of the hotel's culinary and bar employees." Since that time, the Hotel has refused to bargain collectively with the Union as the representative of its food and beverage employees. The Hotel did, however, maintain the then existing agreement until its expiration and dealt with the Union concerning grievances during its term. In November 1974, the Union requested a list of unit employees' names and addresses. The Hotel has refused to supply such a list.

■ To sustain a refusal to bargain charge, the General Counsel must show that the Union represented a majority of the unit employees when the Hotel refused to bargain. As a general rule, an uncertified but voluntarily recognized union enjoys a conclusive presumption of majority status for a reasonable time, usually one year, after voluntary recognition and a rebuttable presumption thereafter.[6] *NLRB v. Tahoe Nugget, Inc., et al.,* 584 F.2d 293 (9th Cir. 1978). "The presumption is rebutted if the employer shows, by clear, cogent, and convincing evidence, that the union was in

> *At the time* when the Sahara Tahoe Hotel, Stateline, Nevada, employs bartenders and culinary workers, the hotel *shall become* a party to the Agreement commonly known as the Agreement between the Reno Employers Council and the Lake Tahoe Area employers.
>
> . . .
>
> (Emphasis added.)

5. Shortly after the complaint was issued in this case, the election petition was dismissed.

6. *See NLRB v. Lee Office Equipment,* 572 F.2d 704, 706 (9th Cir. 1978); *NLRB v. Cayuga Crushed Stone, Inc.,* 474 F.2d 1380 (2d Cir. 1973); *NLRB v. San Clemente Publishing Corp.,* 408 F.2d 367 (9th Cir. 1969).

the minority or that the employer had a good faith reasonable doubt of majority support at the time of the refusal." Id. at 297.

The Hotel presents three arguments to the Court: (1) that the normal rebuttable presumption did not arise from the Hotel's execution of a pre-hire bargaining agreement with the Union; (2) that the presumption did not survive the Hotel's timely withdrawal from the multi-employer Council; and (3) that, assuming a presumption is operative, substantial evidence on the record as a whole does not support the Board's conclusion that the Hotel failed to establish a good faith reasonable doubt.

*Presumption of Majority Support*

The Hotel first contends that as a result of the circumstances under which the Union obtained its initial recognition by the Hotel, the normal presumption of majority support never arose. Characterizing the 1965 agreement between the Union and the Hotel as a pre-hire agreement made before the Hotel employed any food and beverage employees, the Hotel argues that a pre-hire agreement does not rest upon a showing of majority support and thus cannot create a presumption of continuing majority support. The Hotel cites in support of its argument *NLRB v. Local No. 103, Int'l Assoc. of Bridge Structural & Ornamental Iron Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978). To recognize the presumption in such a situation according to the Hotel, would be irreconcilable with § 8(f) of the Act,[7] which provides that the existence of a pre-hire agreement in the building and construction industry does not constitute an unfair labor practice and does not bar the holding of a certification election under §§ 9(c) and 9(e) of the Act. The Hotel further argues that the pre-hire agreement was unlawful on its face because the Hotel was not "engaged primarily in the building and construction industry," as required by § 8(f), and therefore cannot give rise to a presumption of majority support. Finally, the Hotel argues that § 10(b) of the Act[8] does not foreclose raising the existence of the unlawful pre-hire agreement to challenge the applicability of the presumption.

 We find it unnecessary to respond to these arguments in detail or to determine whether the 1965 agreement constituted a pre-hire agreement at all. The Hotel's argument overlooks the fact that, in addition to the 1965 agreement, the Hotel was a party to a series of successive agreements all of which granted voluntary recognition to the Union *after* the Hotel had hired food and beverage employees. The presumption of majority status is clearly applicable in this case because it certainly arises from the most recent agreement, rendering the effect of the purported pre-hire agreement irrelevant.

The Board appears to have recognized this point because it stated in its decision:

It is well settled that the existence of a *prior contract*, lawful on its face, raises a dual presumption of majority—a presumption that the Union was the majority representative at the time the contract was executed, and a presumption that its majority continued at least through the

---

7. In pertinent part, § 8(f) provides that:

It shall not be an unfair labor practice . . . for an employer *engaged primarily in the building and construction industry* to make an agreement covering *employees engaged* (or who, upon their employment, will be engaged) *in the building and construction industry* with a labor organization *of which building and construction employees* are members . . . because (1) the majority status of such labor organization has not been established . . . prior to the making of such agreement . . . *Provided further*, that any agreement which would be invalid, but for clause (1) of this

subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title. 29 U.S.C. § 158(f) (emphasis added).

8. Section 10(b) of the Act, 29 U.S.C. § 160(b), provides in part that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . . ." Although the section refers expressly to the issuance of a complaint, this Court has held that evidence of an unfair labor practice that occurred beyond the § 10(b) period could not be admitted in defense of a refusal to bargain charge. *NLRB v. Tragniew, Inc.*, 470 F.2d 669 (9th Cir. 1972).

life of the contract. Following the expiration of the contract, the presumption continues and, though rebuttable, the burden of rebutting it rests on the party who would do so.

(Emphasis added; footnote omitted). This statement demonstrates that the Board was not looking backwards to the first agreement which bound the Hotel and the Union but to the existence of an ongoing bargaining relationship renewed in successive agreements. The presumption of majority support in this situation serves to foster stability of a bargaining relationship which had endured for nine years. *See NLRB v. Tahoe Nugget, supra.*

■ The Hotel's second argument—that the presumption of majority support did not survive its withdrawal from the multi-employer unit—has been fully addressed by this Court in *NLRB v. Tahoe Nugget, supra,* and the holding in that case controls the resolution of the issue here. We said in *Tahoe Nugget:*

> When respondents joined the Association and recognized the Union, they implicitly declared their employees favored the Union. Thus, majority status can be directly inferred from the employer's own conduct; the presumption is not derived from the larger unit's majority, but originates with the employer's implicit declaration of a majority in the single employer unit. Moreover, the original factual inference is convincing: employers normally will not knowingly violate the law and union fraud is rare. Continued membership in the larger unit does nothing to negate this principle even though the larger unit becomes the appropriate one for bargaining. The original presumption subsists: withdrawal from the unit simply entails a reversion to the original unit, a unit previously determined from the employer's own conduct to favor union representation.

*Id.* at —— (footnote omitted). Consequently, we hold that the Board was correct in applying a presumption of majority support in this case.

*Reasonable Doubt Defense*

The Administrative Law Judge found, and the Board agreed, that no single factor relied upon by the Hotel supported a good faith reasonable doubt that the Union lacked majority status at the time of the Hotel's refusal to bargain. However, the ALJ held that the factors viewed in their totality established the defense and rebutted the presumption. The Board rejected this conclusion because of the speculative and subjective nature of the evidence and because the circumstances, standing alone or viewed in their totality, in no way reflected the sentiments of a majority of the Hotel's employees. Consequently, the Board held that the petitioner had failed to establish the good faith reasonable doubt defense. Substantial evidence on the record as a whole supports this finding; hence, we enforce.

■ The Hotel asserted several factors which it claimed demonstrated a reasonable doubt. Many of these same factors were present in *Tahoe Nugget, supra,* and we upheld the Board's determination that the respondents there had failed to rebut the presumption of majority support. We see no necessity for a prolonged discussion of these factors for our reasoning in *Tahoe Nugget* applies here. Thus, evidence of a high turnover rate, union inactivity prior to the summer of 1974, low Union membership, financial difficulties of the Union, and a vigorous membership drive were all properly accorded only minimal weight by the Board. None of these factors pointed unequivocally to a decline in Union support among petitioner's employees. Moreover, by the time of the refusal to bargain, the Union had begun to show renewed interest in the Hotel's employees. The Union inspected working conditions, received employee complaints, filed several grievances, and solicited suggestions for bargaining demands. Hence, reliance on inactivity prior to June to support withdrawal of recognition in October ignores the intervening events. As for high turnover, it is well established that new employees are presumed to support the Union in the same

ratio as their predecessors. *NLRB v. Tahoe Nugget, supra.* We have held before that union membership is not the equivalent of Union support. *NLRB v. Vegas Vic, Inc.,* 546 F.2d 828 (9th Cir. 1976). This is particularly true in a right to work state like Nevada, where employees may choose not to join a union but nevertheless desire union representation. *Terrell Machine Co. v. NLRB,* 427 F.2d 1088 (4th Cir. 1970).

The Hotel also introduced evidence that a number of employees asked what would happen if the Union "got in" and otherwise demonstrated ignorance of Union representation. However, this ignorance is not necessarily indicative of a desire not to have the Union represent them. Moreover, these remarks came from only a small percentage of employees out of a work unit of 525 to 750 employees.

The newspaper reports which referred to low union membership are not persuasive. The articles dealt with union membership in a general area and said nothing of an actual lack of union support at the Hotel. The remarks of a business agent of another union and of an agent of the NLRB to the effect that the Union represented only 5% or 20% of the area employees are similarly flawed. The Board attributed little importance to these offhand opinions, and we agree that they do little to further the Hotel's defense.

As in *Tahoe Nugget, supra,* while some of the evidence points to a decline in Union support within the bargaining unit, nevertheless, the cumulative weight of all of the evidence is not enough to rebut the presumption. It is ambiguous at best and we see no reason to disturb the Board's finding that

> the web [of circumstances] contains not a single thread of evidence that the employees themselves had told [the Hotel] that they no longer wanted the Union to represent them. Indeed, the web contains not a single thread of evidence that reflects or even purports to reflect the sentiments of the employees themselves—any unit employee much less a majority of the unit employees—on the

question of union representation. Absent such threads, the web of circumstances is like the Cheshire cat's grin—nothing behind it.

In view of the holding on the refusal to bargain charge, we also agree that the refusal to provide the list of employees' names and addresses was unlawful.

The Board's order is enforced.