**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LEXINGTON CARTAGE COMPANY, Respondent.**

No. 82–1088.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1983.
Decided July 27, 1983.

Elliott Moore, Deputy Associate Gen. Counsel, Eric Moskowitz (argued), N.L.R.B., Washington, D.C., for petitioner.

Robert F. Houlihan, Donald P. Wagner (argued), Stoll, Keenon & Park, Lexington, Ky., for respondent.

Before KEITH and JONES, Circuit Judges, and TAYLOR, District Judge.*

ANNA DIGGS TAYLOR, District Judge.

The National Labor Relations Board seeks enforcement, pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. §§ 151, 160(e), of its order of October 22, 1981, directing respondent Lexington Cartage to cease and desist from its refusal to recognize and bargain with Teamsters Local 651, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The Board found that respondent's undisputed refusals to recognize and bargain with Local 651 constitute unfair labor practices, in violation of 29 U.S.C. § 158(a)(5) and (1). For the reasons discussed below, the Board's petition for enforcement is granted.

The facts are undisputed. On August 3, 1979, the Board conducted a consent representation election in a bargaining unit consisting of the sixteen truck drivers whom respondent employs at its facility in Lexington, Kentucky, where it is undisputedly engaged in interstate commerce. The union, Local 651, won the election and was certified by the Board as the exclusive representative of all employees within the bargaining unit on October 30, 1979. On January 18, 1980, at the first bargaining meeting, the union submitted contract proposals and respondent took them under advisement. Four additional meetings were held in February and March, at which respondent took the position that it had no duty to bargain because the union had lost the support of the majority of the bargaining unit; and on April 7, 1980, the union filed a charge of refusal to bargain against respondent with the Board.

In response to the union's charge, respondent petitioned the Board to dismiss the matter and yield jurisdiction to the United States District Court for the Eastern District of Kentucky, where respondent had filed a lawsuit seeking a declaratory judgment that it had no duty to bargain with the charging union because of the union's loss of the support of the bargaining unit. The judgment of District Judge Scott Reed dismissing that lawsuit for lack of subject matter jurisdiction is affirmed by this court in case numbers 82–5174 and 82–5175, also decided this date. The company's motion requesting that the Board yield jurisdiction was also denied, and the Board's Administrative Law Judge (ALJ) proceeded to a hearing of the unfair labor practice charge.

At the Board hearing, respondent presented evidence that within a week after the union's certification Mr. Roosevelt Coats, one of respondent's truck drivers and a member of the bargaining unit, presented the general manager with a petition purporting to bear the signatures of every member of the bargaining unit, expressing their unanimous renunciation of the union as their bargaining representative. The ALJ ordered that testimony stricken from the record, as irrelevant, and permitted all additional evidence of the circumstances surrounding the Coats petition to be placed on record only as an offer of proof, subject to the same ruling of irrelevance to the issue of respondent's refusal to bargain.

The offer of proof consisted of testimony that an obscene cartoon depicting Roosevelt Coats in obeisance to respondent's General Manager, beseeching him to "Let me be your spy," had been found posted in the plant. Respondent had then retained a handwriting expert with whose assistance it ascertained to its satisfaction that Mason, the leading union proponent among the drivers, was responsible for the posting. Respondent then discharged Mason on October 26, 1979. As further part of respondent's offer of proof Roosevelt Coats testified that, although he had experienced difficulty in obtaining signatures for his petition renouncing the union until then, Mason's discharge was followed by the immediate signing of the entire bargaining unit.

* Honorable Anna Diggs Taylor, District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

His testimony was that Mason's discharge had "cut the head off" of the union drive.

The ALJ noted that the offer of proof had failed to demonstrate union adoption or approval of the conduct attributed to Mason, and that the union had not even sought Mason's reinstatement. He further noted that the proffered evidence allowed for argument that the unanimous petition had not resulted from the alleged union misconduct, but from respondent's discharge of the chief union proponent within the unit.

The analysis and conclusion of the ALJ, however, was based upon the long settled Board rule that a union's continued majority status is conclusively presumed for one year from the date of its certification as the exclusive representative of a bargaining unit, and that a petition of disavowal from the bargaining unit does not provide an "unusual circumstance" justifying refusal to bargain with such a union. The ALJ properly noted the consistent judicial approval of that Board rule since *Brooks v. NLRB,* 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). Accordingly, the ALJ concluded that respondent had failed to adduce relevant, competent, and probative evidence to establish "unusual circumstances," *see, Brooks,* 348 U.S. at 98–99, 75 S.Ct. at 178 (setting forth Board recognized unusual circumstances), justifying its undisputed refusal to recognize and bargain with Local 651 after February 25, 1980. Respondent was found to have committed an unfair labor practice violative of § 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5) and (1).

■ The findings of fact of the ALJ are well supported by substantial evidence on the whole record, and must therefore be affirmed here pursuant to 29 U.S.C. 160(e). *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The conclusions of law flowing from those facts, upon which the Board's orders are based, are well settled.

The Act, at 29 U.S.C. § 159(c)(3), provides that "[n]o election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held.

\* \* \* " The Board has, in its discretion, construed that twelve month election bar to run from the date of certification when an election has resulted in the certification of a union, and in the *Brooks* case, *supra,* the Supreme Court approved that exercise of Board discretion in the implementation of Congressional policy.

In *Brooks,* Mr. Justice Frankfurter considered an employer's claim that its refusal to bargain was justified by the union's apparent loss of majority during the certification year, and wrote:

Although the Board may, if the facts warrant, revoke a certification or agree not to pursue a charge of unfair labor practice, these are matters for the Board; they do not justify employer self-help or judicial intervention. The underlying purpose of this statute is industrial peace. To allow employers to rely on employees' rights in refusing to bargain with the formally designated union is not conducive to that end, it is inimical to it. Congress has devised a formal mode for selection and rejection of bargaining agents and has fixed the spacing of elections, with a view of furthering industrial stability and with due regard of administrative prudence.

[348 U.S. at 103, 75 S.Ct. at 181.]

Accordingly, the *Brooks* court affirmed the Board rule that an employer must meet its duty to recognize and bargain with a certified union through the certification year, despite the union's loss of majority within that period. Although unusual circumstances may indeed occur during the certification year which may persuade the Board to relieve the employer of that duty, such as dissolution of the union, transfer of affiliation by the unit to a new union, or a vast accretion to the bargaining unit, the simple loss of majority support is not among them. Any contrary rule, the *Brooks* court noted, would be scarcely conducive to good faith bargaining. Employers would be made well aware that dilatory tactics tending to undermine the union could free them from any further obligation, whereas eleven months of diligent bar-

gaining with the union might all come to naught if the union were then turned out by a simple petition. Unions, on the other hand, would be placed under intense pressure to produce an immediate contract, or risk summary dismissal. Since *Brooks,* employers have been uniformly required to honor the union's certification year, however confident they may be of that union's loss of majority support during that period. *See, e.g., NLRB v. Burns Int'l. Security Services, et al.,* 406 U.S. 272, 279, 279 n. 3, 92 S.Ct. 1571, 1577, 1578 n. 3, 32 L.Ed.2d 61 (1972); *NLRB v. Gissel Packing Co., Inc., et al.,* 395 U.S. 575, 599 n. 14, 89 S.Ct. 1918, 1932 n. 14, 23 L.Ed.2d 547 (1968); *N.T. Enloe Memorial Hospital v. NLRB,* 682 F.2d 790, 794 (9th Cir.1982); *Mammoth of California, Inc. v. NLRB,* 673 F.2d 1091, 1092 (9th Cir.1982); *Crestline Memorial Hospital Ass'n., Inc. v. NLRB,* 668 F.2d 243, 246 (6th Cir.1982); *Air Express Int'l. Corp. v. NLRB,* 659 F.2d 610, 614 (5th Cir.1981); *Bellwood General Hospital, Inc. v. NLRB,* 627 F.2d 98, 102 (7th Cir.1980); *Pick-Mt. Laurel Corp. v. NLRB,* 625 F.2d 476, 479 (3d Cir.1980).

In *NLRB v. Lee Office Equipment,* 572 F.2d 704 (9th Cir.1978), the court was asked to exempt an employer refusal to bargain during the certification year because the union had allegedly not only lost its majority status but had done so as a result of its own misconduct. The court first noted that, as in this case, there had been no evidence to implicate the union as responsible for the misconduct which had occurred. The court held, however, that even if the employer reasonably believed the union to be guilty of the misconduct which allegedly precipitated its loss of majority, the employer was not justified in violating its duty to bargain through the balance of that union's certification year. The circumstance was not "unusual," within the meaning of *Brooks.* That court wrote:

> As we recently held, "[e]ven tortious union tactics do not relieve an employer of the duty to bargain in good faith." *NLRB v. Ramona's Mexican Food Prod., Inc.,* 531 F.2d 390, 394 (9th Cir.1975). The statutory duty to bargain in good

faith, 29 USC § 158(a)(5), (b)(3), (d), is part of a complex statutory framework, one purpose of which is to protect the "paramount public interest" by minimizing "labor disputes ... that endanger the public health, safety, or welfare ..." H.R.Rep. No. 510, 80th Cong., 1st Sess. 1, reprinted in [1947] U.S.Code Cong.Serv., p. 1135. Thus, in most cases, additional misconduct is more likely avoided by scrupulous adherence to the duty to bargain than by its breach.

572 F.2d at 707 (footnote omitted).

The employer, in such circumstances, is not left without a remedy. If the facts warrant, and on appropriate petition, the Board may always revoke the union's certification or, in its discretion, agree not to prosecute a charge of unfair labor practice. The matter is not, however, opened to self-help, judicial intervention, or unfair labor practices.

More recently, in *Crestline Memorial Hospital Ass'n, Inc. v. NLRB,* 668 F.2d 243 (6th Cir.1982), this court had occasion to entertain the defense of refusal to bargain on the basis of a good faith doubt of the union's majority status. We held, in accordance with *Brooks,* that "... once a union is certified, its majority status and exclusive rights as bargaining representative are conclusively presumed for one year." *Id.* at 246.

■ We also note that the Board's order, that this union's certification year shall commence on the date on which respondent undertakes to bargain in good faith, is well "within the allowable area of the Board's discretion in carrying out Congressional policy." *Brooks,* 348 U.S. at 104, 75 S.Ct. at 181; *NLRB v. Lee Office Equipment,* 572 F.2d at 707, n. 5. The Board may extend the certification bar by the amount of time remaining in the certification year at the point when the employer illegally refused to bargain. In this case, as bargaining never commenced, it was within its discretion to provide a new certification year.

Accordingly, the Board's order will be enforced in full.