**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**AMERICARE–NEW LEXINGTON HEALTH CARE CENTER, Respondent.**

No. 96–5822.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 4, 1997.

Decided Aug. 28, 1997.

David Habenstreit (argued and briefed), National Labor Relations Board Office of the General Counsel, Washington, DC, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Linda Dreeben (briefed), National Labor Relations Board Appellate Court Branch, Washington, DC, for Petitioner.

David F. Byrnes (briefed), David S. Durham (briefed), Maria G. Narayan (briefed), Littler Mendelson, San Francisco, CA, Ronald I. Tisch (argued), Littler Mendelson, Washington, DC, for Respondent.

Before: KENNEDY, CONTIE, and COLE, Circuit Judges.

KENNEDY, Circuit Judge.

The National Labor Relations Board ("Board") petitions to enforce its order of April 14, 1995, which affirmed the decision by the Administrative Law Judge ("ALJ") that respondent Americare–New Lexington Health Care Center ("the Company") violat-

ed the National Labor Relations Act, 29 U.S.C. §§ 151 et seq. ("NLRA"), by withdrawing recognition from, and thereafter refusing to bargain collectively with, a union certified as the exclusive bargaining representative of unit employees. For the following reasons, we GRANT the petition for enforcement.

## I.

The Company maintains a nursing home in New Lexington, Ohio. In 1987, the Board conducted a union representation election and consequently certified the Bus, Sales, Truck Drivers, Warehousemen and Helpers, Local Union No. 637, affiliated with the International Brotherhood of Teamsters, AFL–CIO ("the Union"), as the exclusive representative of a bargaining unit of nurses' aides, dietary aides, rehabilitating aides, laundry aides, and other employees at the New Lexington nursing home. The Union and the Company later negotiated a collective bargaining agreement ("CBA"), which was effective from May 1, 1988 to April 30, 1991.

In March 1991, the Board responded to a decertification petition filed by a bargaining unit employee by conducting a decertification election. Because the Union received a majority of the votes in that election, the Board again certified the Union as the exclusive representative of unit employees on March 22, 1991.

The Union and the Company met to negotiate a successor CBA on April 30, 1991. On May 2, 1991, however, the Company withdrew recognition of the Union, based upon a petition submitted to the Company by bargaining unit employees which indicated that a majority of those employees did not support the Union.

The Union filed an unfair labor practice charge, alleging that the Company had violated the NLRA, 29 U.S.C. §§ 158(a)(1),(a)(5), by withdrawing recognition and refusing to bargain in good faith. After the Board indicated that it intended to issue a complaint based upon this charge, the Company executed a document on June 27, 1991 (the "Settlement Agreement"), in which it declined to admit wrongdoing but nonetheless agreed to recognize and bargain with the Union for a "reasonable" period of time. Although the Union refused to enter into the Settlement Agreement, the Board unilaterally approved it on July 18, 1991. Given the existence of the Settlement Agreement, the Board declined to issue a complaint.

On August 29, 1991, the Union and the Company resumed meeting in order to negotiate a CBA. On March 26, 1992, however, the Company again withdrew recognition of the Union and refused to bargain because a majority of unit employees again had indicated that they did not support the Union. The Company also refused to provide information requested by the Union in June, 1992, basing this refusal upon the loss of majority support by the Union.

The Union filed two complaints against the Company, alleging that it had violated §§ 158(a)(1),(a)(5) by withdrawing recognition on March 26, 1992 and refusing in June, 1992 to provide requested information. After the Board consolidated these complaints, the ALJ held a hearing on the charges on March 13, 1993. The ALJ decided that the Company had violated §§ 158(a)(1),(a)(5) by withdrawing recognition on March 26, 1992; the ALJ reasoned that the March, 1991 certification entitled the Union to a protected certification year, and that this certification year lasted until July, 1992, four months longer than usual, because the Company had refused to negotiate between May and August, 1991. The ALJ recommended a remedy which, in part, required the Company to bargain with the Union for an additional four months.

The Company appealed to the Board, which, over a dissent, affirmed the findings and conclusions of the ALJ. See Americare–New Lexington Health Care Ctr., 316 N.L.R.B. 1226 (1995). In contrast to the recommendation of the ALJ, however, the Board required the Company to bargain with the Union for a six-month period.

The General Counsel now petitions for enforcement of the decision by the Board. Because the finding that the Company violated the NLRA by withholding information rests upon the prior finding that the Company improperly withdrew recognition of the Un-

ion on March 26, 1992, the Company has not contested on appeal the issue of its refusal to provide requested information.

We have jurisdiction pursuant to 29 U.S.C. § 160(e).

## II.

### A.

The parties first contest the applicable standard of review: the Company urges us to employ *de novo* review, whereas the General Counsel asserts that we should apply a deferential standard. Although neither party claims that this case requires us to examine factual findings, the parties disagree as to whether the rulings by the Board in this case constitute interpretations of the NLRA.

In *Holly Farms Corp. v. NLRB*, —— U.S. ——, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996), the Supreme Court recently emphasized that courts must defer to an interpretation of the NLRA by the Board under the two-step test of *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See NLRB v. Webcor Packaging, Inc.*, 118 F.3d 1115 (6th Cir.1997)(citing *Holly Farms*, —— U.S. at ——, ——, 116 S.Ct. at 1401, 1406). Accordingly, we first must determine "whether Congress has directly spoken to the precise [interpretive] question at issue." *Id.* (quoting *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781). If so, we must enforce the will of Congress. *See id.* "If not, however, 'the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781). This accords with the longstanding rule that "courts must accord deference to the Board's interpretation of the [NLRA], and the Board's interpretation will stand if 'reasonably defensible.'" *General Truck Drivers, Chauffeurs, Warehousemen*

*and Helpers of Am., Local No. 957 v. NLRB*, 934 F.2d 732, 735 (6th Cir.1991)(quoting *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979)). Further, we cannot substitute our judgment for that of the Board simply because we would have decided differently if we had heard the case *de novo*. *See NLRB v. Local 1131*, 777 F.2d 1131, 1136 (6th Cir.1985)(quoting *NLRB v. Pipefitters Union Local No. 120*, 719 F.2d 178, 181 (6th Cir.1983)); *see also Emery Realty, Inc. v. NLRB*, 863 F.2d 1259, 1262 (6th Cir.1988)(courts defer to conclusions of Board when based upon reasonably defensible construction of NLRA).

The Company argues that we should review *de novo* the rulings of the Board because the protected "certification year" is not a statutory precept, but is instead a creation of federal common law. The Company relies upon *Cleveland Real Estate Partners v. NLRB*, 95 F.3d 457, 462, 464–65 (6th Cir. 1996), in which we reviewed *de novo* an interpretation by the Board of the word "discrimination," as used in *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956).[1] The Company insists that, under *Cleveland Real Estate*, we must employ *de novo* review in this case because "certification year," like the word "discrimination," is a common-law doctrine which derives from the holding in *Brooks v. NLRB*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954).

In *Brooks*, a company in part contested the ruling by the Board that 29 U.S.C. § 159(c)(3), which bars the Board from holding a certification election within one year of a valid certification or decertification election within the same bargaining unit, similarly prevents an employer from relying upon loss of majority support in order to refuse to bargain with a union within one year of a certification based upon a Board-conducted election. *See id.* at 99, 103–04, 75 S.Ct. at 181–82. The *Brooks* Court rejected the con-

---

1. The Board and the *Cleveland Real Estate* court interpreted the following language in *Babcock:*

> It is our judgment, however, that an employer may validly post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will en-

able it to reach the employees with its message and if the employer's notice or order does not discriminate against the union by allowing other distribution.

*Babcock*, 351 U.S. at 112, 76 S.Ct. at 684; *see Cleveland Real Estate*, 95 F.3d at 464.

tention by the company that "whenever an employer is presented with evidence that his employees have deserted their certified union, he may forthwith refuse to bargain," *id.* at 103, 75 S.Ct. at 181 holding that the ruling by the Board that an employer cannot refuse to bargain with a union within one year of a certification election "is a matter appropriately determined by the Board's administrative authority." *Id.* at 104, 75 S.Ct. at 181. Similarly, the *Brooks* Court explained that "the Board's view that the one-year period should run from the date of certification rather than the date of election seems within the allowable area of the Board's discretion in carrying out congressional policy." *Id.*

■ The *Brooks* opinion itself therefore reveals that the Supreme Court regarded the existence and contours of the certification year rule as questions within the broad discretion of the Board to interpret and apply the NLRA. Although courts do not defer to the Board when it decides a legal question beyond its expertise, *see NLRB v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 343 (6th Cir.1990)(conclusion by Board that individuals acted as alter egos of corporation was not entitled to deference)(Engel, J., concurring),[2] the instant case presents an issue within the special competence of the Board, rather than a question for which the federal courts are equally or better able than the Board to decide. *See also Local 1131,* 777 F.2d at 1134–38 (within broad discretion of Board to rule that guarantee under NLRA of separation between employment terms and union activity generally precludes super seniority for union officials). Further, Congress has not issued a direct statement on this interpretive issue. We therefore must uphold the interpretation by the Board of the certification year rule in this case if it represents a reasonable construction of the NLRA. *See, e.g., Webcor Packaging,* 118 F.3d at 1123.

### B.

■ The parties next contest whether a protected certification year followed the March 22, 1991 certification of the Union by the Board. As noted, an employer must recognize and bargain in good faith with a union which has received Board certification through a valid election, even if the employer has objective evidence that the union has lost the support of a majority of the employees during that period. *See, e.g., Brooks,* 348 U.S. at 103–04, 75 S.Ct. at 181–82; *NLRB v. Lexington Cartage Co.,* 713 F.2d 190, 193 (6th Cir.1983). The Company, however, argues that a protected certification year follows only the *initial* certification, and that a union, such as the Union in this case, is not entitled to another protected certification year after it has won a subsequent election.

The parties cite a handful of Board decisions and debate whether those opinions reveal whether the refusal to bargain at issue had occurred after an initial certification election or a subsequent certification election. The parties concede, however, and we agree, that it appears that there is no caselaw which addresses specifically the issue now confronting us. The cases cited by the parties therefore offer little guidance, regardless of which party has characterized their facts more accurately.

The ALJ rejected the claim of the Company, basing his decision upon a finding that "[a] decertification election campaign may create just as much turmoil and disruption as an initial organizing campaign," and that the need for an opportunity to stabilize the bargaining relationship after a decertification election may be just as great. *See* 316 N.L.R.B. at 1230, 1995 WL 227691. Because § 159(c)(3) forbids an election within one year of a prior valid certification *or* decertification election, the ALJ also held that "it would make little sense to say that after the Union won the decertification election it

---

**2.** The concurrence in *Fullerton Transfer* cited *NLRB v. Better Bldg. Supply Co.,* 837 F.2d 377, 378 (9th Cir.1988); *Oil, Chemical and Atomic Workers Local 1–547 v. NLRB,* 842 F.2d 1141, 1144 n. 2 (9th Cir.1988); and *Seafarers Local 777 v. NLRB,* 603 F.2d 862, 869 n. 17, 872 (D.C.Cir. 1978); these cases respectively held that the

Board received no deference to its rulings regarding the meaning of the Bankruptcy Code, the retroactivity of a new legal standard under the NLRA, and an interpretation of the common law of agency. *See Fullerton Transfer,* 910 F.2d at 343 (Engel, J., concurring).

could not be forced into another election for 1 year, ... but that the [Company] could withdraw recognition on the basis of an employee petition before that year was up." *Id.* A majority of the Board agreed, adding that application of the certification year rule in this context "promotes peace and stability in industrial relations by providing at least 1 year from the date of certification of representation during which parties can negotiate ... free from distraction." *See id.* at 1226, 1995 WL 227691. One member of the Board dissented, however, asserting that enforcing the certification year rule after decertification elections does not further one of the major goals of the certification year rule, allowing a bargaining relationship a reasonable period in which to succeed. *See id.* at 1227–28, 1995 WL 227691 (Cohen, dissenting). The dissent also noted that the Union in this case already had acted as the representative of the bargaining unit for approximately three and a half years before the March, 1991 certification. *See id.*

■■■■ We find that the holding of the Board constitutes a reasonable interpretation of the NLRA. First, the underlying purpose of the NLRA is industrial peace, and the Board permissibly decided that application of the certification year rule in this context advances that goal. *See Brooks,* 348 U.S. at 103, 75 S.Ct. at 181. Further, given that § 159(c)(3) already prevents the Board from holding another election within a certification year, the decision of the Board to prevent employers from accomplishing through informal methods that which could not be accomplished through an election, i.e., the revocation of the results of a Board-sponsored election, comports with the goal of "promot[ing] a sense of responsibility in the electorate and needed coherence in administration." *Id.* at 99, 75 S.Ct. at 178 (further describing an election as a "solemn and costly occasion"). The holding of the Board also conforms with the observation by the Supreme Court that the preferred method of determining whether a union has majority support is a secret-ballot election. *See NLRB v. Gissel Packing Co.,* 395 U.S. 575, 602, 89 S.Ct. 1918, 1933, 23 L.Ed.2d 547 (1969).

■■■■ The Company and the Board dissenter are correct that one of the important goals of the certification year rule is the protection of vulnerable unions, *see Brooks,* 348 U.S. at 100, 75 S.Ct. at 179 and that enforcing the rule in this context rarely will advance that goal. Nonetheless, we cannot say that the holding of the Board is an unreasonable construction of the NLRA. Moreover, although unions generally will be weakest following their initial certification elections, the Board was not unreasonable to find that decertification elections can be so disruptive that it is necessary to allow a subsequent period "free from distraction" in which to negotiate. Finally, the Company is incorrect to suggest that the instant result will allow unions to insulate themselves unfairly by holding repeated certification elections: a union validly certified as the current representative of a bargaining unit may not request elections to reaffirm its majority status. *See, e.g., Seven–Up Bottling Co.,* 222 N.L.R.B. 278, 1976 WL 6594 (1976).

### C.

The Board certified the Union on March 22, 1991. Although the Union and the Company met to negotiate a successor CBA on April 30, 1991, the Company withdrew recognition of the Union on May 2, 1991. After the Union filed a complaint, the Company executed the Settlement Agreement on June 27, 1991 and began to meet with Union representatives to bargain on August 29, 1991. The Company, however, again withdrew recognition of the Union on March 26, 1992.

Finding that the certification year was tolled from May 2 to August 29, 1991, the approximately four-month period during which the Company refused to bargain with the Union, the Board ruled that the March 26, 1992 withdrawal of recognition violated the NLRA because the certification year continued until July 22, 1992.

The Company argues that the certification year ended on March 22, 1992, and asserts that the Board improperly construed the Settlement Agreement as extending the certification year beyond its natural termination date of March 22, 1992. Stressing that the

Settlement Agreement did not purport to extend the certification year, but merely provided that the Company would bargain with the Union for a "reasonable" period of time, the Company argues that the extension of the certification year beyond March 22, 1992 violates due process and the terms of the Settlement Agreement.

 We disagree. A certification year does not begin to run until an employer actually meets with union representatives to bargain. *See Van Dorn Plastic Mach. Co. v. NLRB,* 939 F.2d 402, 404 (6th Cir.1991). Similarly, the Board has discretion to find that a certification year interrupted by a refusal to bargain extends for as long a period as the employer refused to bargain, including when the employer has agreed in a settlement agreement to bargain for an unspecified period of time. *See, e.g., Straus Communications, Inc. v. NLRB,* 625 F.2d 458, 464 (2d Cir.1980); *cf. Lexington Cartage,* 713 F.2d at 193 (Board had discretion to order company to bargain with union for certification year extended by amount of time during which company had refused to bargain). The Board therefore had the discretion to hold that the Union was entitled to an actual year of willingness by the Company to bargain. Without specific language in the Settlement Agreement limiting the protected certification period, the cases cited above indicate that the silence of the Settlement Agreement favors the General Counsel, not the Company.[3]

 A certification year will begin to run before negotiations actually begin when union procrastination has caused the delay in the start of the bargaining process. *See Van Dorn,* 939 F.2d at 405. In this case, however, the ALJ found, and the Company does not contest, that the Company stated that it would be unavailable to bargain until August 29, 1991, even though the Union proposed

earlier dates upon which to meet. *See* 316 N.L.R.B. at 1230–31 n. 5, 1995 WL 227691.

Emphasizing that a majority of its employees have expressed their desire not to be represented by the Union, the Company insists that "this case cries out for application of the exception noted by the Supreme Court in *Brooks,* whereby 'the Board may, if the facts warrant, revoke a certification or agree not to pursue a charge of an unfair labor practice.'" Brief of the Company, at 37 (quoting *Brooks,* 348 U.S. at 103, 75 S.Ct. at 181). The Company, however, conveniently neglects to quote the rest of that sentence from *Brooks,* which explains that the decision to revoke a certification or not pursue a complaint "are matters for the Board; they do not justify employer self-help or judicial intervention." 348 U.S. at 103, 75 S.Ct. at 181. Indeed, the *Brooks* Court rejected the same claim now urged by the Company, stating that to allow employers to rely on employees' rights in order to refuse to bargain with a formally designated union would be "inimical" to the goals of the NLRA. *See id.*

**D.**

Finally, the Company argues that the Board imposed an improper penalty. The ALJ found that the Company should be required to bargain for four months, a period roughly equal to the portion of the certification year during which it had refused to bargain. The Board, however, held that "a 6–month extension of the certification year is necessary to remedy the effects of the [Company's] disruptions of negotiations." 316 N.L.R.B. at 1227 n. 5, 1995 WL 227691.

 We will not disturb a remedial order of the Board unless it "is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the [NLRA]." *Adair Standish Corp. v. NLRB,* 912 F.2d 854, 864 (6th Cir.1990)(quoting *Van Dorn Plastic Mach.*

---

**3.** The Settlement Agreement provided that the Company did not admit to violating the NLRA by withdrawing recognition on May 2, 1991. Further, the General Counsel has confined itself to arguing only that a finding that a protected certification year followed the 1991 election is necessary to the ultimate finding that the Company improperly withdrew recognition on March 26, 1992. *But cf. Mammoth of Cal., Inc. v. NLRB,*

673 F.2d 1091, 1093–94 (9th Cir.1982)(company which enters settlement agreement in which it does not admit guilt still assumes duty to bargain for a reasonable time, regardless of expiration of certification year). Its refusal to admit guilt, however, cannot shield the Company because we have upheld the ruling of the Board that the Company violated the NLRA in 1991 by withdrawing recognition during a certification year.

*Co. v. NLRB,* 881 F.2d 302, 309 (6th Cir. 1989)). The Company first suggests that the Board may not alter *sua sponte* the remedy recommended by an ALJ. The Board, however, may impose *sua sponte* a remedy different than that suggested by an ALJ because parties may move the Board to reconsider such rulings. *See, e.g., NLRB v. Allied Prods. Corp., Richard Bros. Div.,* 548 F.2d 644, 654 (6th Cir.1977). Second, the Company argues that the Board could not require it to bargain for a period two months longer than the duration of its original refusal to bargain. The Board, however, has the discretion to impose such remedies. *See Colfor, Inc. v. NLRB,* 838 F.2d 164, 167–68 (6th Cir.1988)(when employer had refused to bargain for two-month period, Board could require employer to bargain for an additional six months). Because the Company disrupted the bargaining process by refusing to bargain, the Board could reasonably conclude that the Union will need an additional two months of bargaining to regain the position it would have had if the Company had not violated the NLRA. The remedy imposed here is not an abuse of discretion.[4]

### III.

Accordingly, we GRANT the petition for enforcement.

---

4. Although we do not reverse the Board, we nonetheless stress that it should have provided a more detailed explanation as to precisely why the behavior of the Company required the two-month addition.