NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

RAMONA'S MEXICAN FOOD PROD-
UCTS, INC., Respondent.

No. 73-2450.

United States Court of Appeals,
Ninth Circuit.

Nov. 26, 1975.

Patrick H. Hardin, Atty., N.L.R.B., Washington, D. C. (argued), for petitioner.

George Jensen, Los Angeles, Cal. (argued), for respondent.

## OPINION

Before CHAMBERS and BROWNING, Circuit Judges, and EAST,* Senior District Judge.

PER CURIAM.

The National Labor Relations Board (hereinafter Board), pursuant to Section 10(e), 29 U.S.C. § 160(e), of the National Labor Relations Act, as amended (29 U.S.C. § 151 *et seq.*) (hereinafter the Act), petitions for the enforcement of its order issued against Ramona's Mexican Food Products, Inc. (hereinafter the Company) on May 17, 1973. The Board's decision and order is reported at 203 N.L.R.B. 663 (1973).

## FACTS:

The Company manufactures and processes Mexican foods and other luncheon and food products at Gardenia, California, and during the pertinent times employed approximately 269 employees in a unit which was duly represented by Produce, Refrigerated & Processed Foods and Industrial Workers Local 630, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (hereinafter the Union).

The Union had negotiated a collective-bargaining agreement with the Company which expired as of November 30, 1971. During the month of August, 1971, the Union advised the Company of the upcoming expiration date and presented to the Company a proposed new contract under date of October 21, 1971.

Thereafter some eight collective bargaining meetings, each of approximately two

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

hours in length, were held between December 6, 1971, and March 8, 1972, all without reaching an agreement upon a single issue notwithstanding the submission of compromising responding proposals by the Union. Pursuant to a strike vote on March 3, 1972, the unit employees struck the Company from the following March 8 through the following June and maintained picket lines throughout. The picketing was not without third party sympathizers' participation and violence calling for state court protective relief. Some six collective bargaining meetings were held during the strike period and some five more were held during the strike aftermath until August 4, 1972, when the Company withdrew from collective bargaining pending the charges filed by the Board.

## CHARGES:

During the period between March 29, 1972 and the following July 5, various charges of violation of Section 8(a)(1), (3), and (5), 29 U.S.C. § 158(a)(1), (3), and (5), and obstructing commerce within the meaning of Section 2(6) and (7), 29 U.S.C. § 152(6) and (7), of the Act were lodged by the General Counsel of the Board against the Company. We deem it unnecessary in this Memorandum to repeat in detail all of the alleged acts of violation, except to note that the charged violations consisted of a series of alleged specific acts of unfair labor practices, urging employees to abandon the Union and form a company union, promising employees benefits if they would abandon the strike and bargain individually, refusal to bargain with the Union as a rightful representative and threats of economic reprisals against striking employees throughout the collective bargaining process, coupled with denials of entry to the plant by the Union and refusal to submit requested pertinent information not otherwise available to the Union or employees.

## HEARINGS:

The charges were heard by an Administrative Law Judge (Law Judge) during the period of August 7, 8, 9, 10, 21, 22, and 23,

1972. The Company was represented throughout the collective bargaining meetings and the hearing before the Law Judge by executive officials and counsel. The record made was extensive and reflects a full and fair evidentiary hearing on all charges. The decision of the Law Judge is a detailed and exhaustive review of the evidence presented with clearly expressed reasons for his findings of fact, conclusions of law and recommended order for the Company to cease and desist certain conduct and to give affirmative action relief to certain employees. The Company filed voluminous exceptions to the decision.

The Board, acting through a three member panel, considered the record, the decision, and recommended order in light of the exceptions and briefs and affirmed the rulings, findings, conclusions and decision of the Law Judge with only minor modifications.

## ISSUES PRESENTED HEREIN:

The Company asserts that the Law Judge erred in:

(a) Entering findings of fact unsupported by the evidence and particularly adverse to the undisputed evidence contained in the Company's letter of March 2, 1972, Exhibit 3;

(b) Rejecting as irrelevant evidence a number of items of documentary evidence, including a purported collective bargaining agreement ultimately entered into between the Company and the Union on or about the 9th day of January, 1973, which the Company claimed tended to show that it had at all times offered to do just what was ultimately required in the purported contract of January 9, 1973;

(c) Denying a continuance of the hearing to secure a transcript of prior cross-examination of a Union official then under recross-examination; and

(d) Arbitrarily rejecting the Company's official's testimony as incredulous, all to the Company's prejudice.

Further, the Company asserts that the Board erred in denying the Company's motion to reopen the hearing for the receipt in evidence of the January 9th collective bargaining agreement.

DISCUSSION:

■ (a) Exhibit 3 is the Company's purported "final offer" of an extension of the collective bargaining agreement which had expired four months previously with four conditions. The purported final offer in the main limited the wage increase to 5.5 percent across the board without reference to any future pay board action thereon, and agrees in part to the Union's proposals for vacation pay and provides a form of Union security (collection of dues by solicitation), provided the Union pays an annual compensation which was in excess of the amount of the dues to be collected. We find the "final offer" to be a last ditch dodge of the impending unfair labor practices strike and would under its terms discriminate against any ultimate striking employee. Exhibit 3 does not controvert or compromise the Law Judge's findings of prior unfair labor practices on the part of the Company officials.

■ (b) We have examined the documents offered by the Company and conclude that the Law Judge was correct in rejecting each of them as irrelevant to the issues. The ultimate terms of the post strike agreement reached after a long unsuccessful unfair labor practices strike infers more to the success of the Company officials' evasive, stalling, and unlawful tactics than it does to the presence of good faith bargaining.

■ (c) We find no abuse of discretion in denying the motion for continuance.

■ (d) The record does not reveal an arbitrary rejection of testimony.

"The [Law Judge's] determination on credibility is not to be lightly disturbed, *NLRB v. International Longshoremen's & Warehousemen's Union & Local 27,* 514 F.2d 481 (9th Cir. 1975), especially when the finder of fact, as here, provides a written statement of reasons for choosing not to believe the employer's story. *See White Glove Building Maintenance, Inc. v. Brennan,* 518 F.2d 1271 (9th Cir. 1975)." *NLRB v. Magnusen,* 523 F.2d 643 (9th Cir. 1975).

And so it is here. We accept the Law Judge's and the Board's determination on the credibility of Company's witness in the absence of a clear preponderance of all the evidence that the determination is incorrect. *NLRB v. Ayer Lar Sanitarium,* 436 F.2d 45, 49 (9th Cir. 1970).

The Board's rejection of the Company's motion to reopen the hearing for the receipt in evidence of the January 9th contract was within its unabused discretion.

In final analysis, the only real issue presented in this proceeding is whether substantial evidence on the record before the Law Judge and the Board as a whole supports the Board's findings that the Company:

(1) Interfered with, threatened, solicited, and coerced its employees to abandon the Union and/or strike in violation of Section 8(a)(1) of the Act;

(2) Refused to bargain in good faith with the Union in violation of Section 8(a)(5) and (1) of the Act; and

(3) Discriminated against the striking employees engaged in an unfair labor practice strike in violation of Section 8(a)(3) and (1) of the Act.

"When the [Board] applies to the Court of Appeals for enforcement of an order, the Board's findings must be sustained on appeal if supported by substantial evidence in the record considered as a whole. 29 U.S.C. § 160(e). *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)." For once, "it is established that the Board correctly found that there had been unfair labor practices, its selection of a remedy is accorded great deference. *NLRB v. Seven-Up Bottling Co.,* 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953)." *NLRB v. Selvin,* 527 F.2d 1273, at 1276, 1277 (9th Cir. 1975).

■ We have made an exhaustive review of the record, and while we have re-

frained from a detailed repetition of the Law Judge's clear and concise review of the evidence, we find that the record is replete with relevant evidence that the Company's officials parried every lawful proposal of the Union toward reaching a new collective bargaining contract for the employees with half measure proposals and evasive statements to the Union coupled with delaying, stalling, and unlawful tactics. In short, we find that there was substantial relevant evidence in the record to support each of the Board's findings and conclusions that the Company officials had violated Sections 8(a)(1), 8(a)(5) and (1) and 8(a)(3) and (1) of the Act as set forth in items (1), (2) and (3) above in that they:

(1) Interfered with, coerced, and threatened with sanctions and solicited with favors its employees to abandon the Union and/or strike in violation of Section 8(a)(1) of the Act. *Santa Fe Drilling Co. v. NLRB,* 416 F.2d 725, 728 (9th Cir. 1969); *NLRB v. Raytheon Co.,* 445 F.2d 272, 273 (9th Cir. 1971); *NLRB v. Crystal Tire Co.,* 410 F.2d 916, 918 (8th Cir. 1969); and *International Telephone & Telegraph Corp. v. NLRB,* 382 F.2d 366, 373–74 (3d Cir. 1967), *cert. denied,* 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 829 (1968).

(2) Refused to bargain in good faith with the Union in violation of Section 8(a)(5) and (1) of the Act. The Company's refusal to furnish the Union with relevant information concerning the payment of bonuses was violative of the subject section. *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495, 498–99 (1967), and *Standard Oil of California v. NLRB,* 399 F.2d 639, 642 (9th Cir. 1968). In sum, the Company's adamant refusal to furnish relevant information requested by the Union not only constitutes an independent violation of Section 8(a)(5) and (1) of the Act but also lends credence to the Board's finding that the Company negotiated in overall bad faith. *NLRB v. Stanis-*

*laus Implement and Hardware Co.,* 226 F.2d 377, 381 (9th Cir. 1955). Also, the Company's repudiation of the prior offer to install a stove in the employees' lunchroom at a critical stage of the negotiations was strong evidence of bad faith. *NLRB v. J. A. Terteling & Sons, Inc.,* 357 F.2d 661 (9th Cir. 1966). Finally, on August 4, the Company announced that it would not submit a new proposal because of the pending charges before the Board. However, the filing of a charge by a Union clearly does not excuse an employer from its bargaining obligation under Section 8(a)(5). *See Skyline Homes, Inc. v. NLRB,* 323 F.2d 642, 647 (5th Cir. 1963), *cert. denied,* 376 U.S. 909, 84 S.Ct. 662, 11 L.Ed.2d 607 (1964).

The Company's last ditch claim that it was excused from good faith bargaining by reason of, first, the employees' strike, and, secondly, the picket line misconduct or violence, is utterly without factual basis or legal merit. The strike was provoked by the Company's evasive and dilatory tactics and was purely and simply an unfair practice provoked strike as contrasted to an economic strike. The misconduct and violence on the picket line was indisputably caused by third party sympathizers, over which the Union had no control. Even so, the Union's behavior in the instant case could not have so impaired the bargaining relationship as to render further negotiations fruitless. As this court recognized in *Cheney California Lumber Co. v. NLRB,* 319 F.2d 375, 378 (9th Cir. 1963), the use of strike tactics which may deserve condemnation does not in itself constitute a refusal by the Union to bargain in good faith, citing the admonition of the Supreme Court in *NLRB v. Insurance Agents International Union,* 361 U.S. 477, 495, 80 S.Ct. 419, 430, 4 L.Ed.2d 454, 468 (1960) that "[T]he use of economic pressure by the parties . . . is part and parcel of the process of collective bargaining. . . ." Even tortious union tactics do not relieve an employer of the duty to bargain in good faith. *NLRB v.*

*Reed & Prince Mfg. Co.,* 118 F.2d 874, 885–86 (1st Cir.), *cert. denied,* 313 U.S. 595, 61 S.Ct. 1119, 85 L.Ed. 1549 (1941). Picket-line violence may be the natural "by-product of the frustration and emotionalism engendered by a prolonged collective bargaining negotiation . . . ." *United States v. Caldes,* 457 F.2d 74, 78 (9th Cir. 1972).

The law is settled that employees who strike in response to an employer's unfair labor practices are entitled to full reinstatement to their former or substantially equivalent positions immediately upon their unconditional offer to return to work, even if permanent replacements have been hired, all without sanctions or withholding of benefits. *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309, 317 (1956); *Snow & Sons v. NLRB,* 308 F.2d 687 (9th Cir. 1962); *General Drivers & Helpers Union Local 662 v. NLRB,* 112 U.S.App.D.C. 323, 302 F.2d 908, 911, *cert. denied, sub nom. Rice Lake Creamery Co. v. General Drivers & Helpers Union Local 662,* 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65 (1962); *NLRB v. West Coast Casket Co.,* 205 F.2d 902, 907–08 (9th Cir. 1953); *NLRB v. Great Dane Trailers,* 388 U.S. 26, 32, 87 S.Ct. 1792, 18 L.Ed.2d 1027, 1033 (1967); *NLRB v. Jemco, Inc.,* 465 F.2d 1148, 1151–52 (6th Cir. 1972), *cert. denied,* 409 U.S. 1109, 93 S.Ct. 911, 34 L.Ed.2d 690 (1973); and *NLRB v. Duncan Foundry and Machine Works,* 435 F.2d 612, 617–18 (7th Cir. 1970).

The Board's petition for enforcement of the order in its entirety is granted.

ENFORCED.