**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TRIDENT SEAFOODS CORP., Respondent.**

**No. 79–7545.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1980.

Decided March 23, 1981.

Susan L. Williams, Washington, D. C., for petitioner.

Eugene R. Nielson, Lane, Powell, Moss & Miller, Seattle, Wash., for respondent.

Before SNEED and FLETCHER, Circuit Judges, and JAMESON, District Judge.[*]

FLETCHER, Circuit Judge:

This is an application for enforcement of an order of the National Labor Relations Board requiring respondent Trident Seafoods to cease and desist its unfair labor practices, to post appropriate notices, and to reinstate with back pay certain striking employees. We enforce the Board's order.

## FACTS

Trident operates a seafood processing plant aboard a vessel permanently moored in Akutan Bay, Alaska, a remote area in the Aleutian Islands. The employees involved in this proceeding were hired for the 1978 king crab season. On October 15, 1978, midway through the two-month season, thirteen employees went on strike demanding higher wages. The striking employees rejected Trident's compromise wage offer. Management thereupon discharged twelve of the employees for refusal to work and informed them that they would be ineligible for rehire. The thirteenth striker returned to work. The discharged employees returned to Seattle.

By letter dated October 18 and received by the employees about October 20, Trident informed the discharged employees that it had been mistaken in describing their cessation of work as a discharge and in informing them that they were ineligible for rehire. The letter assured the employees that they would be accorded all rights due strikers under the NLRA.

The employees filed an unfair labor practice charge with the NLRB. The Administrative Law Judge found, and the Board agreed, that Trident had violated § 8(a)(1) of the NLRA by discharging its striking employees. 29 U.S.C. § 158(a)(1) (1976). That finding is not challenged here. The Board issued a cease and desist order and awarded the employees back pay from the date of discharge until the date they received Trident's letter. Determination of the amount of the back pay award was left for later compliance proceedings.

The Board here petitions to have its order enforced; Trident contests only the award of back pay to the striking employees.

## ANALYSIS

Trident argues that it is entitled to a hearing on the propriety of a back pay award as to each employee *before* the Board's order is enforced, rather than at the stage of compliance proceedings.

### A. The *Abilities & Goodwill* Rule

The Board awarded back pay from the date of discharge, in accordance with its recent change in policy articulated in *Abilities & Goodwill, Inc.*, 241 NLRB No. 5, 100 LRRM 1470 (1979), *enforcement denied on other grounds*, 612 F.2d 6 (1st Cir. 1979). Prior to that case, discharged strikers were required to make an unconditional request for reinstatement before becoming entitled to back pay, unless such a request was shown to be futile. *NLRB v. Ramona's Mexican Food Prods., Inc.*, 531 F.2d 390, 395 (9th Cir. 1975); *see also NLRB v. Southern Greyhound Lines*, 426 F.2d 1299, 1303–04 (5th Cir. 1970). Employees discriminatorily discharged, on the other hand, were not required to request reinstatement in order to trigger the employer's liability for back pay. *See Abilities & Goodwill, Inc.*, 241 NLRB No. 5, 100 LRRM 1470 (1979).

The effect of this change in Board policy is to shift to the employer the burden

---

[*] The Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

of proving that the employee would not have accepted a timely offer of reinstatement, had one been made. This court had approved such an approach long before the Board decision in *Abilities & Goodwill. Shelly & Anderson Furniture Mfg. Co., Inc. v. NLRB*, 497 F.2d 1200, 1204–05 (9th Cir. 1974); *accord, NLRB v. Valmac Indus., Inc.*, 533 F.2d 1075, 1077 (8th Cir. 1976); *NLRB v. Southern Greyhound Lines*, 426 F.2d 1299, 1303 (5th Cir. 1970). The rule is a reasonable one, well within the Board's discretion to establish. *NLRB v. J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 262–63, 90 S.Ct. 417, 419–420, 24 L.Ed.2d 405 (1969).

### B. The Bifurcated Proceedings

■ Trident argues that the Board's refusal to take testimony on Trident's possible defenses to the individual back pay awards goes to its *liability* for back pay, not simply to the amount. Therefore, it contends, the Board's order cannot be enforced unless and until the employees have shown that they would have returned to work had they been offered reinstatement. We disagree.

The Board's right to defer the determination of the amount of back pay liability until after its award has been enforced has long been recognized:

> The Board's procedure in unfair labor practice cases is first to hold a hearing to determine whether an unfair labor practice was committed, and, if it was, whether it would "effectuate the policies" of the Act for the Board to order reinstatement with back pay of any employees who were discharged. In such a proceeding the Board does not concern itself with the amount of back pay actually owing. This is excluded from the proceeding in the interest of the efficient administra-

tion of the Act. The determination of specific liabilities may involve a protracted contest. . . . Since the determination that the discharge was wrongful is subject to review, extensive proceedings to determine the amount of liability may be rendered superfluous by reversal. And if the determination is sustained and becomes final, it may be expedient for a respondent to reach agreement and avoid further litigation. The propriety of this established two-stage procedure of the Board in these back-pay cases is not questioned.

*NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 411, 80 S.Ct. 441, 447, 4 L.Ed.2d 400 (1960) (Frankfurter, J., concurring) (citations omitted). *Accord, UFI Razor Blades, Inc. v. District 65, Wholesale, Retail, Office & Processing Union*, 610 F.2d 1018, 1023 (2d Cir. 1979); *NLRB v. J.S. Alberici Constr. Co., Inc.*, 591 F.2d 463, 468–69 & n.6 (8th Cir. 1979). In *Great Chinese American Sewing Co. v. NLRB*, 578 F.2d 251, 255–56 (9th Cir. 1978), this court held that:

> We agree with the Board that questions relating to the exact amount of back pay owing (including whether discharged employees made reasonable efforts to secure employment, and whether at some reasonably determinable date employment with [the employer] would not have been available because [its] operations would have ceased . . .) are prematurely raised in this enforcement petition. Those issues may be explored in a compliance proceeding.[1]

In this case, as in *Great Chinese American Sewing Co.*, the Board's order makes it very clear that Trident will have an opportunity at the compliance proceedings to

---

1. Our decision in *NLRB v. Fort Vancouver Plywood Co.*, 604 F.2d 596, 602–03 (9th Cir. 1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980), is not to the contrary. There we refused to enforce a Board order for reinstatement where:

> The precision in the . . . Board's order makes it clear that no further proceedings were contemplated regarding the number of employees to be reinstated.

> Enforcement of an order so specific would deny the company an opportunity to show that fewer than 72 jobs would have been available regardless of its unfair practices. The reinstatement order therefore cannot stand.

*Id.* at 603 (citation omitted).

present all of its objections to the individual back pay awards.[2]

Accordingly, we conclude that the Board's back pay order was proper and should be ENFORCED.

---

2. The Board's decision reads in pertinent part: Respondent [Trident] has excepted to the failure of the Administrative Law Judge to permit it to question each striker at the hearing as to whether he or she would have agreed to continue working or to return to work if Respondent's notice of separation had merely stated that they were on strike and remained eligible for rehire. Because there has already been a hearing in this matter, we find that this question is best left for the compliance stage of this proceeding and thus we will allow Respondent to put this question to the dischargees then.