In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 15-3695 & 15-1141

AMGLO KEMLITE LABORATORIES, INC.,

*Petitioner/Cross-Respondent,*

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner.*

Petition for Review and Cross-Application
for Enforcement of a Decision and Order
of the National Labor Relations Board.
No. 13-CA-065271

ARGUED FEBRUARY 11, 2016 — DECIDED AUGUST 17, 2016

Before BAUER and WILLIAMS, *Circuit Judges*, and
ADELMAN, *District Judge*.[*]

WILLIAMS, *Circuit Judge*. Amglo Kemlite Laboratories
makes specialty lights, such as those on airplane wings. Its

[*] Of the Eastern District of Wisconsin, sitting by designation.

employees in Illinois went on strike to protest low wages. The National Labor Relations Board found that Amglo unlawfully retaliated by transferring some work from Illinois to a separate Amglo facility in Mexico. The Board issued a remedial order. In this case, the Board asks us to enforce its order and Amglo asks us to set it aside. Because the order has a reasonable basis in law and is supported by substantial evidence, we enforce it.

## I. BACKGROUND

### A. Strike and Response

On September 19, 2011, Amglo's President, Izabella Christian, visited Amglo's Illinois facility. Before her visit, several employees had complained to her—and to the Illinois plant manager, Anna Czajkowska—about low wages. During the visit, a supervisor reminded Christian about the employees' complaints, but she responded that Amglo would not raise wages.

The next morning, nearly all of the plant's 94 employees went on strike. Christian and Czajkowska arrived shortly after the strike began, told employees that Amglo would not raise wages, and directed employees to return to work or go home. The employees asked to speak to Amglo's owner, Jim Hyland, but Christian responded that Hyland was not as "pro-Polish" as he used to be. (Nearly all of the employees were of Polish descent.) Czajkowska said: "I'll tell you what he's going to say. He will tell us to get rid of half of you. And you're not going to do anything. You're not going to scare him. You're not going to threaten him. You're going to lose." Czajkowska held resignation forms in her hand and told employees that if they did not like their wages, they could

quit. Christian discussed globalization and explained that companies can move production to China and Mexico (two places where Amglo had plants). The employees made a written demand for guaranteed annual raises and for back-pay since their last raise. They got no response.

Employees arrived at the plant at 5:00 a.m. the next morning and continued striking. Two hours later, Christian and Czajkowska arrived and ordered employees to return to work or get off the company's property. Choosing the second option, employees reassembled on public property and continued their strike—but not for long. Over the next week, several employees returned to work, with no raise.

On September 27, all of the employees who remained on strike—more than 50 people—signed an unconditional offer to return to work without a raise. Christian said that she could not give them a timeline for recalls, nor could she say how many of them would be recalled, because Amglo was transferring some work from Illinois to Mexico "because of the situation." By September 30, Amglo had recalled all but 22 employees. A month later, Amglo sent those 22 people a letter stating that, in part because of the transfer of work to Mexico, there were no jobs available. The letter informed the employees that, if a job opened up, they would be recalled before any new employee was hired. As of February 2012, none of the 22 had been recalled.

### B. Administrative Proceedings

The National Labor Relations Board includes a General Counsel, who is responsible for investigating and prosecuting unfair labor practices. It also includes a "Board," which is a quasi-judicial body that decides such cases. The General

Counsel is independent of the Board. *See generally* https://www.nlrb.gov/who-we-are. Here, after an investigation, the General Counsel charged Amglo with unfair labor practices.

An Administrative Law Judge held a hearing and issued findings and conclusions, which were appealed to the Board. The Board concluded that Amglo engaged in unfair labor practices by: (1) threatening to fire employees for striking, and (2) transferring work from Illinois to Mexico in retaliation for the strike. The Board ordered Amglo to avoid taking such actions in the future, to return the transferred work to Illinois, to offer full reinstatement to any employee who lost his or her job as a result of the transfer, and to make employees whole for earnings and benefits lost as a result of the transfer.

The Board asks us to enforce its order, and Amglo asks us to set it aside.[1]

## II. ANALYSIS

The National Labor Relations Act gives employees "the right to … engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. It constitutes an "unfair labor practice" for an employer to "interfere with, restrain, or coerce employees

---

[1] Amglo's challenge concerns only the transfer of work from Illinois to Mexico. Amglo did not challenge the finding that it threatened to fire workers for striking. So we summarily affirm the findings and remedial orders on that issue. *See NLRB v. Shelby Mem'l Hosp. Ass'n*, 1 F.3d 550, 567 (7th Cir. 1993) (summarily affirming uncontested violations); *NLRB v. P*I*E Nationwide, Inc.*, 923 F.2d 506, 516 (7th Cir. 1991) (defenses waived if not raised in opening brief).

in the exercise of" that right. *Id*. § 158(a)(1). The Board is empowered to find the existence of an unfair labor practice, and to issue remedial orders. *Id*. §§ 160(a), (c); *see also Contemporary Cars, Inc. v. NLRB*, 814 F.3d 859, 868 (7th Cir. 2016). We have jurisdiction to enforce, modify, or set aside the Board's order. 29 U.S.C. §§ 160(e), (f).

Amglo does not challenge the Board's finding that the strike was protected activity under the Act. So our review is only of the Board's conclusion that Amglo violated the Act by transferring work from Illinois to Mexico for the unlawful purpose of retaliating against striking employees. *See NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14–17 (1962) (employer cannot "punish a man by discharging him for engaging in concerted activities which § 7 of the Act protects"); *St. Regis Paper Co.*, 247 NLRB 745, 745 (1980) (transferring work can constitute retaliation); *Westpoint Transp., Inc.*, 222 NLRB 345, 352 (1976) (same). "We apply a deferential standard of review to the Board's findings, looking only to see whether they are supported by substantial evidence. This means such relevant evidence that a reasonable mind might accept as adequate to support the conclusions of the Board. Our task is not to reweigh the evidence; it is only to determine whether there is evidence in the record supporting the Board's outcome that could satisfy a reasonable fact finder." *AutoNation v. NLRB*, 801 F.3d 767, 771 (7th Cir. 2015) (internal citations and quotation marks omitted). "We review the Board's applications of the law to the facts and its interpretations of the Act deferentially as well, taking care to ensure that its legal conclusions have a reasonable basis in law." *Id*. (internal quotation marks omitted).

Amglo acknowledges that it transferred some work from Illinois to Mexico. Its purpose was unlawful if animus toward the employees, because of the strike, was a "motivating factor" for its action. *See Molon Motor & Coil Corp. v. NLRB*, 965 F.2d 523, 526 (7th Cir. 1992); *Wright Line, Inc.*, 251 NLRB 1083, 1089 (1980). Finding that to be the case, the Board relied on the following:

- Christian's discussion of globalization implicitly warned employees that if they continued striking, Amglo would transfer work to a foreign facility.

- Amglo showed hostility to the strike, including by threatening to fire half of the employees on the first day.

- Christian told striking employees that Amglo was moving work to Mexico "because of the situation."

- During the General Counsel's investigation, Czajkowska admitted that Amglo "accelerated" existing plans to transfer work "because of the strike."

- The timing of the transfer, so soon after the strike began, was suspicious.

Also, in a separate section of its opinion, the Board noted that Amglo had *increased* its workforce, from 85 to 94 employees, in the nine months prior to the strike—which undercuts Amglo's argument that the post-strike reduction was for economic reasons. We are satisfied that substantial evidence supports the Board's finding that the strike was a motivating factor in Amglo's transfer of some work to Mexico.

Amglo argues that the Board's order cannot be enforced because the General Counsel failed to prove *the extent* of the

unlawful transfer, meaning exactly how much work was transferred to Mexico and how many employees were affected. But that is not required at this stage. As Amglo acknowledges in its reply brief, the Board employs a "judicially approved bifurcation procedure" in which a first proceeding determines whether an employer engaged in an unfair labor practice, and a second proceeding determines the precise contours of an appropriate remedy. *See NLRB v. Trident Seafoods Co.*, 642 F.2d 1148, 1150 (9th Cir. 1980); *see also Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 902 (1984) (approving Board's bifurcated procedures); *NLRB v. Katz's Delicatessen of Houston Street, Inc.*, 80 F.3d 755, 771 (2d Cir. 1996) (finding employer's challenge premature because compliance proceeding had not yet occurred).

So the initial proceeding must show the *existence* of a violation, while the *extent* may be proved at the second stage. But there is a nuance to that rule. It must be shown in the first proceeding that the violation is not *de minimis*. *Challenge-Cook Bros. of Ohio, Inc.*, 295 NLRB 435, 438 (1989). In *Challenge-Cook Brothers*, the Board found that the employer's transfer of work to another plant violated the Act, and the Board ordered backpay. *Challenge-Cook Bros. of Ohio, Inc.*, 282 NLRB 21, 22 (1986). The Sixth Circuit enforced that order. *NLRB v. Challenge-Cook Bros. of Ohio, Inc.*, 843 F.2d 230 (6th Cir. 1988). In the subsequent compliance proceeding, "the quantity of work that was transferred and the number of employees affected thereby [remained to] be determined." *Challenge-Cook Bros. of Ohio, Inc.*, 295 NLRB at 435. But the Board refused to let the employer argue that *no* employees were affected, because that would amount to relitigating the *existence* of a violation. *Id.* at 438.

Amglo argued that the amount of work transferred was "miniscule." To the extent this was an argument that *no* employees were adversely affected, the argument needed to be addressed in the Board's first proceeding. And it was. In rejecting the view that minimal work was transferred, the Board relied on the following evidence:

- Amglo told a significant fraction of its employees—22 out of 94—that they could not return to work in part because of the transfer of work to Mexico.

- When more than 50 employees offered to return to work without a raise, Christian could not give them a timeline or say how many would be rehired, because of the transfer of work to Mexico.

Amglo points to different evidence to argue that the transfer was minimal. But "[t]he presence of contrary evidence does not compel us to reverse the Board's order as long as there is also substantial evidence supporting it." *Contemporary Cars*, 814 F.3d at 868–69. Because the Board relied on "such relevant evidence that a reasonable mind might accept as adequate to support the conclusions of the Board," *AutoNation*, 801 F.3d at 771, our review is complete.

### III. CONCLUSION

We DENY Amglo's petition for review and ENFORCE the Board's order.