**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS; CULINARY WORKERS UNION LOCAL #226; BARTENDERS UNION LOCAL 165,<br>*Petitioners*, | No. 15-72878<br><br>NLRB No.<br>28-CA-013274 |
| v. | OPINION |
| NATIONAL LABOR RELATIONS BOARD,<br>*Respondent*, | |
| ARCHON CORPORATION,<br>*Respondent-Intervenor*. | |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted November 14, 2017
San Francisco, California

Filed February 27, 2018

Before: William C. Canby, Susan P. Graber,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### National Labor Relations Act

The panel granted a Union's petition for review, vacated an order of the National Labor Relations Board, and remanded for the Board to award standard make-whole relief, in a case arising when the now-defunct Hacienda Resort Hotel and Casino and Sahara Hotel and Casino in Las Vegas violated section 8(a)(5) of the National Labor Relations Act ("NLRA") by unilaterally terminating the Local Joint Executive Board, Culinary Workers Union Local 226 and Bartenders Union Local 165's dues-checkoff without bargaining to agreement or impasse.

In a prior case, this court determined that there was a violation of the NLRA and remanded to the Board to determine what relief was warranted. The Board declined to award make-whole relief, the standard remedy when an employer unlawfully ceases union dues-checkoff. Instead, the Board awarded the Union prospective-only relief.

The panel held that the Union's arguments were not premature.

The panel held that the Board clearly abused its discretion in declining to award the standard remedy of make-whole relief.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

First, the panel held that the Board did not provide a valid explanation for departing from its standard remedy in dues-checkoff cases. Specifically, the panel held that the Board's reliance-based explanation was improper, because it was unreasonable for the employers to rely on Board precedent that had never been applied in a reasoned manner in the absence of a union security clause, and because the Board's other explanations were similarly erroneous.

Second, the panel held that by ordering prospective-only relief against defunct entities, the Board effectively ordered no relief at all, and therefore did not effectuate the policies of the NLRA.

## COUNSEL

Kimberley C.Weber (argued) and Richard G. McCracken, McCracken Stemerman & Holsberry LLP, San Francisco, California, for Petitioners.

Greg P. Lauro (argued), Attorney; Julie B. Broido, Supervisory Attorney; Linda Dreeben, Deputy Associate General Counsel; John H. Ferguson, Associate General Counsel; Jennifer Abruzzo, Deputy General Counsel; Richard F. Griffin Jr., General Counsel; National Labor Relations Board, Washington, D.C.; for Respondent.

Stephen R. Lueke (argued) and Stefan H. Black, Ford & Harrison LLP, Los Angeles, California, for Respondent-Intervenor.

**OPINION**

PAEZ, Circuit Judge:

The Local Joint Executive Board, Culinary Workers Union Local 226 and Bartenders Union Local 165 (the "Union") petitions for review of an order of the National Labor Relations Board ("NLRB" or the "Board") for the fourth time in this dispute that has now spanned more than two decades. When this case was last before the court, we determined that the operators of the now-defunct Hacienda Resort Hotel and Casino and Sahara Hotel and Casino in Las Vegas (the "Employers")[1] violated section 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(5), by unilaterally terminating the Union's dues-checkoff without bargaining to agreement or impasse. *Local Joint Exec. Bd. v. NLRB* (*LJEB III*), 657 F.3d 865, 876 (9th Cir. 2011). In light of that violation, we remanded for the Board to determine what relief was warranted.

On remand, the Board declined to award make-whole relief, the standard remedy when an employer unlawfully ceases union dues-checkoff. The Board reasoned that make-whole relief was not warranted because, inter alia, the Employers had relied on a Board rule providing that dues-checkoff is not subject to mandatory bargaining. Instead, the Board awarded the Union prospective-only relief against the defunct Employers and their unidentified successors.

---

[1] Archon Corporation ("Archon") is the Employers' parent company. We granted Archon's motion to intervene pursuant to Federal Rule of Appellate Procedure 15(d).

We conclude, for two reasons, that the Board clearly abused its discretion in declining to award the standard remedy of make-whole relief. First, the Board did not provide a valid explanation for departing from its standard remedy in dues-checkoff cases. In particular, the Board's reliance-based explanation was improper, as it was unreasonable for the Employers to rely on Board precedent that had never been applied in a reasoned manner in the absence of a union security clause, and the Board's other explanations were similarly erroneous. Second, by ordering prospective-only relief against defunct entities, the Board effectively ordered no relief at all and therefore did not "effectuate the policies of [the NLRA]." 29 U.S.C. § 160(c). Accordingly, we grant the Union's petition, vacate the Board's order, and remand for the Board to award standard make-whole relief.

## I.[2]

The Employers maintained collective bargaining agreements ("CBAs") with the Union until 1994. The CBAs did not contain union security clauses—clauses that condition employment upon union membership—as these clauses are prohibited in Nevada, a "right-to-work" state. Nev. Rev. Stat. § 613.250; *see also* 29 U.S.C. § 164(b) (providing that federal law does not authorize union security clauses in right-to-work states). The CBAs did, however, require the Employers to deduct union dues from the paychecks of employees who had authorized such deductions. After the final CBA expired in

---

[2] For context, we briefly restate the facts set out in our prior opinions in this case. *See LJEB III*, 657 F.3d at 868–70; *Local Joint Exec. Bd. v. NLRB* (*LJEB II*), 540 F.3d 1072, 1075–78 (9th Cir. 2008); *Local Joint Exec. Bd. v. NLRB* (*LJEB I*), 309 F.3d 578, 580–81 (9th Cir. 2002).

May 1994, the Employers continued to honor these "dues-checkoff" authorizations until June 1995. At that time, the Employers unilaterally terminated the Union's dues-checkoff.

The Union filed unfair labor practice charges against the Employers in August 1995, and the General Counsel for the NLRB subsequently issued consolidated complaints. The Union alleged that the Employers' cessation of dues-checkoff violated the "unilateral change" doctrine articulated in *NLRB v. Katz*, 369 U.S. 736 (1962). Under that doctrine, "an employer's unilateral change in conditions of employment under negotiation is . . . a violation of § 8(a)(5) [of the NLRA], for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal." *Id.* at 743.

An administrative law judge ("ALJ") dismissed the complaints and the Board affirmed, with two members dissenting. *Hacienda Hotel, Inc. Gaming Corp.* (*Hacienda I*), 331 N.L.R.B. 665, 667 (2000). The majority relied on a then-existing exception to the unilateral change doctrine developed in *Bethlehem Steel Co.*, 136 N.L.R.B. 1500 (1962), a case involving a union security clause, and *Tampa Sheet Metal Co.*, 288 N.L.R.B. 322 (1988), which applied *Bethlehem Steel* in a right-to-work state in a footnote and without explanation. *Hacienda I*, 331 N.L.R.B. at 666–67. The Union filed a petition for review, and we vacated the Board's order. *LJEB I*, 309 F.3d at 580. We remanded the case "so that the Board c[ould] either articulate a reasoned explanation for its rule or adopt a different rule with a reasoned explanation to support it." *Id.* at 582.

On remand, the Board abandoned its reliance on *Bethlehem Steel* but affirmed the ALJ's dismissal in another

split decision, on the ground that the Union waived the right to dues-checkoff beyond the expiration of the CBAs. *Hacienda Hotel, Inc. Gaming Corp.* (*Hacienda II*), 351 N.L.R.B. 504, 505 (2007). We again vacated and remanded because there was "simply no clear and unmistakable waiver." *LJEB II*, 540 F.3d at 1075.

In response to the second remand, the Board again concluded without explanation that *Bethlehem Steel* and *Tampa Sheet Metal* compelled the conclusion that the Employers did not violate the NLRA by unilaterally ceasing dues-checkoff. *Hacienda Hotel, Inc. Gaming Corp.* (*Hacienda III*), 355 N.L.R.B. 742, 742 (2010).[3] On review for the third time, we reached the merits and vacated the Board's ruling. *LJEB III*, 657 F.3d at 876. We explained that, where "dues-checkoff provisions do not implement union security . . . but instead exist as a free-standing, independent convenience to willingly participating employees, the reasoning of *Bethlehem Steel* loses its force." *Id.* at 875. We thus "conclude[d] that in a right-to-work state . . . dues-checkoff is akin to any other term of employment that is a mandatory subject of bargaining." *Id.* at 876. Although we left open the possibility for "the Board [to] adopt a different rule in the future," we expressly stated that the Employers in this case violated section 8(a)(5) of the NLRA. *Id.* We remanded with directions to the Board to

---

[3] The Board deadlocked 2–2, with one member recused, on the question of whether to overrule *Bethlehem Steel* and *Tampa Sheet Metal*. *Hacienda III*, 355 N.L.R.B. at 742, 745. Because the Board unanimously agreed that a three-member majority was necessary to overrule existing Board precedent, the Board did not do so at the time. *Id.* at 743, 745. The Board subsequently overruled *Bethlehem Steel* following our decision in *LJEB III*. *See Lincoln Lutheran of Racine*, 362 N.L.R.B. No. 188, 2015 WL 5047778, at *10 (Aug. 27, 2015).

award appropriate relief and observed that "the parties cannot be expected to wait any longer." *Id.*

On remand for the third time, the Board, recognizing the section 8(a)(5) violation, ordered the Employers and their officers, agents, successors, and assigns to (1) cease and desist the unilateral cessation of dues-checkoff; (2) bargain with the Union; (3) rescind the unilateral dues-checkoff changes; and (4) post or mail remedial notices. The four-member majority recognized that make-whole relief is the standard remedy in dues-checkoff cases but declined to award such relief in light of the Employers' reliance on the rule stated in *Bethlehem Steel*. The Board also noted that make-whole relief would require an award of compound interest and that there was "no reason to believe that [the Employers] will not continue to abide by Board law." Dissenting, Member Hirozawa argued that the majority in effect sought to block the retroactive effect of this court's holding in *LJEB III* and that its remedy did not effectuate the policies of the NLRA. Member Hirozawa also noted that the Employers' reliance on *Bethlehem Steel* was "questionable."

The Union timely filed a petition for review.

## II.

The Board is vested with "broad discretion in devising remedies to undo the effects of violations of [the NLRA]." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 316 (1979); *see also* 29 U.S.C. § 160(c) (granting the Board the authority to order relief "as will effectuate the policies of [the NLRA]"). Accordingly, we review the Board's remedial orders for a "clear abuse of discretion." *Cal. Pac. Med. Ctr. v. NLRB*,

87 F.3d 304, 308 (9th Cir. 1996) (quoting *NLRB v. C.E. Wylie Constr. Co.*, 934 F.2d 234, 236 (9th Cir. 1991)).

"Nonetheless, the rule of deference to the Board's choice of remedy does not constitute a blank check for arbitrary action." *Detroit Edison*, 440 U.S. at 316. The Board clearly abuses its discretion when its remedial order is a "patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the [NLRA]." *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540 (1943); *see also Cal. Pac. Med. Ctr.*, 87 F.3d at 308.

## III.

The standard remedy that the Board awards when an employer violates the NLRA by unilaterally ceasing dues-checkoff is make-whole relief.[4] Although the Board may exercise its broad discretion to deviate from a standard remedy, it must provide a rational explanation for doing so, *NLRB v. Hartman*, 774 F.2d 1376, 1388 (9th Cir. 1985), and the remedy that it does order must "effectuate the policies of [the NLRA]," 29 U.S.C. § 160(c); *Va. Elec. & Power*, 319 U.S. at 540. Here, the prospective-only relief ordered by the Board satisfied neither of those requirements. We first address the Board's explanations for declining to award the standard remedy of make-whole relief, and then we turn to the effect of prospective-only relief in this case.

---

[4] Indeed, as counsel for the NLRB conceded at oral argument, the remedial order under review here appears to be the *only* instance in which the Board has declined to award make-whole relief for an employer's unlawful cessation of dues-checkoff.

### A.

The Board cannot impose different remedies in similar situations "[a]bsent some explanation for doing so." *Hartman*, 774 F.2d at 1388. Such an explanation must be "consistent with [the Board's] statutory mandate," *Sheet Metal Workers' Int'l Ass'n, Local No. 355 v. NLRB*, 716 F.2d 1249, 1257 n.3 (9th Cir. 1983), and factually supportable, *see Hartman*, 774 F.2d at 1384. In particular, the Board may not depart from a standard remedy because of an employer's reliance on prior law where such reliance was unreasonable. *Cf. NLRB v. Sav-On Drugs, Inc.*, 728 F.2d 1254, 1256 (9th Cir. 1984) (en banc) (concluding that the employer could not reasonably rely on a regional director's determination because it could be reversed on appeal); *NLRB v. St. Luke's Hosp. Ctr.*, 551 F.2d 476, 484 (2d Cir. 1976) ("[T]he presumption against retroactivity is designed to protect *reasonable* reliance on prior *settled* law . . . ." (emphasis added)).

Here, the Board provided three explanations for its decision not to award the standard remedy of make-whole relief: (1) the Employers reasonably relied on the rule stated in *Bethlehem Steel* at the time of the violation; (2) make-whole relief would require the Employers to pay compound interest on dues reimbursements for the time period covering this protracted litigation; and (3) there is no reason to believe that the Employers will violate the NLRA or Board rules in the future. We address each explanation in turn.

### 1.

The Board first explained in its remedial order that, "[p]roperly rationalized or not, the rule in *Bethlehem Steel*

had been in place for over 50 years," during which time "[e]mployers, like the [Employers] here, have relied upon [it] when considering whether to cease honoring dues-checkoff arrangements following contract expiration." The Board then reasoned that, when the Employers ceased checking off dues in 1995, they "could not have foreseen the . . . decision by the court [of appeals] finding, contrary to *Bethlehem Steel* and its progeny, that the [Employers] committed an unfair labor practice when they ceased dues checkoff upon contract expiration." "In these circumstances," the Board concluded, "it would not be appropriate to order make-whole relief."

The Board's explanation relies on a false premise. Our decision in *LJEB III* was not contrary to *Bethlehem Steel* or its progeny. As for *Bethlehem Steel*, we explicitly declined to "express[] an opinion on the wisdom of the rule" in that case. *LJEB III*, 657 F.3d at 875. Rather, we merely held that the rule in *Bethlehem Steel* did not apply when, as here, there is no union security clause for dues-checkoff to implement. *Id.* at 876. Moreover, our holding was entirely consistent with the Board's reasoning in *Bethlehem Steel*, which linked its rule to the presence of a union security clause. *See Bethlehem Steel*, 136 N.L.R.B. at 1502 (explaining that the checkoff provisions were subject to "similar considerations" as the union security provisions—which became inoperative upon the termination of the CBA and were not subject to mandatory bargaining—because the checkoff provisions "implemented the union-security provisions").

As for *Bethlehem Steel*'s progeny, "[t]he Board has applied its rule in only one case in which the collective bargaining agreement did not contain a union security provision, but it provided no rationale for doing so beyond that offered in *Bethlehem Steel*." *LJEB I*, 309 F.3d at 583–84

(citing *Tampa Sheet Metal Co.*, 288 N.L.R.B. at 326 n.15). This isolated and unexplained extension of the rule in *Bethlehem Steel* is not a reasonable ground for reliance. As we have explained, "[a]lthough a Board rule may become 'well-established' through repetition, it may 'come to stand for' a legal rule only through reasoned decisionmaking." *Id.* at 583 (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)). The rule in *Bethlehem Steel* was not "well-established" in the absence of a union security clause, nor had it "come to stand for" a legal rule in that context. *See id.* at 583–84. Therefore, any reliance by the Employers on *Bethlehem Steel* and *Tampa Sheet Metal* was unreasonable and could not provide a proper basis for the Board's departure from standard make-whole relief.

**2.**

The Board next explained that an award of make-whole relief "would carry with it a requirement that compound interest be paid on all amounts due."[5] The Board appeared particularly concerned about awarding such interest in light of the fact that the Employers "could not have foreseen the protracted litigation . . . before the Board and the Ninth Circuit." Intervenor Archon echoes this concern, pointing out that "this case has been pending for 22 years, of which approximately 15 years ha[ve] been spent waiting for the Board to issue a decision in a case under submission."

---

[5] The Board has adopted daily compounded interest as the standard form of interest on awards of make-whole relief. *See Jackson Hosp. Corp.*, 356 N.L.R.B. 6, 9 (2010); *see also, e.g.*, *Emerald Green Bldg. Servs., LLC*, 364 N.L.R.B. No. 109, 2016 WL 4547528, at *2 (Aug. 26, 2016) (ordering daily compounded interest on dues-checkoff reimbursements).

Archon argues that "it would be unjust to multiply [its] liability by almost a factor of ten because of the administrative delay in this case," and it requests that we toll the accrual period for interest in the event that we direct the Board to order make-whole relief.

Although we are sympathetic to Archon's position, we reject the Board's explanation regarding compound interest and decline to toll the accrual period. As the Board itself explained in a prior decision addressing compound interest:

> There is no force to the argument . . . that compound interest wrongly penalizes respondents for the sometimes protracted nature of unfair labor practice proceedings. The Supreme Court has rejected a similar argument with respect to backpay awards generally, recognizing that delay injures backpay claimants and that the Board is "not required to place the consequences of its own delay . . . upon wronged employees to the benefit of wrongdoing employers." [*NLRB v. J. H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 265 (1969)]. Moreover, as the Federal courts have observed, during the period before a backpay award becomes effective, the respondent enjoys "an interest-free loan for as long as [it can] delay paying out back wages." *Clarke v. Frank*, 960 F.2d 1146, 1154 (2d Cir. 1992).

*Jackson Hosp. Corp.*, 356 N.L.R.B. 6, 9 (2010). The Board's reasoning in *Jackson Hospital* properly applies where, as here, an employer causes unwarranted loss to a union by unilaterally ceasing to collect and remit voluntary dues-

checkoff payments.   Accordingly, we conclude that the Board's consideration of compound interest as a reason not to award standard make-whole relief in this case was improper.

### 3.

Finally, the Board explained that make-whole relief is "not necessary to effectuate the purposes of the [NLRA]" because "the [Employers] believed, correctly, that they were following settled Board law at the time they acted, and there is no reason to believe that they will not continue to abide by Board law."  As we explained *supra*, however, the Employers were not following settled Board law applicable to this case at the time they acted.  Moreover, although deterrence is a proper remedial consideration, the main purpose of make-whole relief is to "recreate the conditions and relationships that would have been had there been no unfair labor practice."  *Enter. Leasing Co. of Fla., LLC*, 362 N.L.R.B. No. 135, 2015 WL 4179685, at *1 n.1 (June 26, 2015) (quoting *Local 60, United Bhd. of Carpenters v. NLRB*, 365 U.S. 651, 657 (1961)).  Thus, even if there were no reason to believe that the Employers would violate the law in the future, that would not be a sufficient basis on which to depart from the standard remedy of make-whole relief.  The Board's decision not to award the standard remedy of make-whole relief, without offering a valid explanation, was a clear abuse of discretion.

### B.

The Union argues that the Board also clearly abused its discretion by ordering prospective-only relief against defunct entities.  The Board disagrees that such relief is ineffective

and further contends that the Union prematurely raises factual issues that must be left for compliance proceedings. We conclude that the Union's arguments are not premature and that the prospective-only relief at issue does not effectuate the policies of the NLRA.

**1.**

We first consider whether the Union's arguments are premature. The Board asserts that questions as to the identity of potential viable successors of the Employers, "as well as the specific contours of bargaining, rescinding the unlawful cessation of dues checkoff, and posting or mailing notices, involve[] matters to be determined at the compliance phase." Thus, the Board contends, the question whether any viable entity "can carry out the remedies" at issue "involve[s] issues for a compliance proceeding." We disagree.

Whereas "*factual* issues *which relate to the details of the remedy* should be delayed to the compliance hearing[,] . . . no exhaustion is required where the challenge on review is to the underlying *legal* basis of the Board's remedial order." *Local 512, Warehouse & Office Workers' Union v. NLRB*, 795 F.2d 705, 715 (9th Cir. 1986) (second emphasis added), *abrogated on other grounds by Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002). Prior to the compliance phase, the Board considers whether a form of relief would "effectuate the policies of the [NLRA]," but "does not concern itself with the amount of [relief] actually owing" because the "determination of specific liabilities may involve a protracted contest." *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 411 (1960) (Frankfurter, J., concurring) (discussing back pay). For example, "questions relating to the exact amount of back pay owing . . . are prematurely raised in [an]

enforcement petition," but "those issues [of back pay, mitigation, and job elimination] may be explored in a compliance proceeding." *NLRB v. Trident Seafoods Corp.*, 642 F.2d 1148, 1150 (9th Cir. 1981) (quoting *Great Chinese Am. Sewing Co. v. NLRB*, 578 F.2d 251, 255–56 (9th Cir. 1978) (per curiam)).

Here, the Union does not challenge specific liabilities or the exact details of the prospective relief at issue. Rather, the Union argues that the Board failed to effectuate the policies of the NLRA because it ordered only prospective forms of relief that cannot be carried out in practice. Although the Union's argument raises predicate factual questions, those questions relate to the legal basis of the Board's order, not to the specific contours of the remedy. *See Local 512*, 795 F.2d at 715. We may review a legal challenge to the Board's remedial order where, as here, predicate factual questions are capable of clear resolution on the record. *Cf. NLRB v. Globe Sec. Servs., Inc.*, 548 F.2d 1115, 1118 n.2 (3d Cir. 1977) (explaining, in the context of a mootness challenge to an enforcement petition, that courts have left the question of impossibility of performance for compliance proceedings usually only "where the record did not clearly show that the employer had gone out of business"). Accordingly, the Union's legal challenge is not premature. The Union's entitlement to effective relief for an unfair labor practice that occurred more than twenty-two years ago cannot be delayed any further.

## 2.

The "statutory command" that the Board's remedial orders "'effectuate the policies of the [NLRA]' . . . at a minimum . . . encompasses the requirement that a proposed

remedy be tailored to the unfair labor practice it is intended to redress." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900 (1984). In general, prospective-only relief ordered against a functioning employer for the benefit of a union and its members satisfies this requirement. *See Hoffman Plastic Compounds*, 535 U.S. at 152. Where no such employer or representative union continues to exist, however, prospective-only relief amounts to no relief at all. *See, e.g.*, *NLRB v. McMahon*, 428 F.2d 1213, 1214 (9th Cir. 1970) (per curiam) ("Enforcement of an order to bargain directed to a defunct organization would be futile."); *Globe Sec. Servs.*, 548 F.2d at 1117 ("Because the Labor Board's order directs [the employer] to bargain with a unit that, all agree, does not exist, enforcement would be a vain and useless act . . . ."); *NLRB. v. Schnell Tool & Die Corp.*, 359 F.2d 39, 44 (6th Cir. 1966) ("It is clear from the face of the order [including a cease-and-desist provision and other injunctive relief] that enforcement of its provisions, with the exception of those calling for the award of back pay, requires the existence of a functioning employer.").

Here, the Board ordered the Employers and their successors to (1) cease and desist the unilateral cessation of dues-checkoff and from interfering with employees' rights under the NLRA "[i]n any like or related manner"; (2) bargain with the Union; (3) rescind the unilateral dues-checkoff changes; and (4) post or mail remedial notices. Although the Board argues that it has "not yet made findings" as to whether these remedies can be carried out as a practical matter, the following facts are not in dispute. The Employers ceased operating when they and their hotels were sold to Archon in 1995. The same year, Archon sold the hotels to unrelated businesses; one hotel, the Hacienda, was demolished in 1996, while the other, the Sahara, was gutted,

massively renovated, and opened as a different hotel between 2011 and 2014. Archon remains the parent company of the Employers, but no longer owns hotels or other unionized operations in Las Vegas.[6] Finally, no party contends that the current owners of the situs properties are successors-in-interest or that their employees would even have any use for the prospective-only relief at issue.

Nonetheless, Archon argues that it can effectively carry out the relief ordered by the Board. The order to bargain and the order to rescind the 1995 dues-checkoff changes, however, are specifically linked to the Union, which has no relationship to Archon. As for the cease-and-desist order, the record does not demonstrate that Archon's current employees have any need for such relief. Moreover, we do not see how a cease-and-desist order governing Archon's current operations outside of Las Vegas, in response to the Employers' cessation of dues-checkoff over twenty-two years earlier in Las Vegas, is at all "tailored to the unfair labor practice it is intended to redress." *Sure-Tan*, 467 U.S. at 900. Finally, because the above remedies are ineffectual, the order directing the Employers and their successors to post or mail notice of such remedies is ineffectual as well.[7]

---

[6] In proceedings before the Board on our third remand, the Union produced public records sufficient to establish the foregoing facts. As these facts are not subject to reasonable dispute and can be accurately and readily determined from the public record sources presented to the Board, we take judicial notice of them. *See* Fed. R. Evid. 201(b).

[7] The Board argues that the Union did not preserve its challenges to the order to bargain and the order to rescind the unlawful cessation of dues-checkoff because it failed to raise them specifically before the Board. *See* 29 U.S.C. § 160(e). This argument is without merit. The Union filed a brief before the Board requesting make-whole relief; at that time, the

## C.

In concluding that the Board clearly abused its remedial discretion, we take note of the reference in the Board's order to *Lincoln Lutheran of Racine*, 362 N.L.R.B. No. 188, 2015 WL 5047778 (Aug. 27, 2015).  There, the Board overruled *Bethlehem Steel* but applied its ruling prospectively only.  *Id.* at *10–11.  As a result, employers who had unilaterally ceased dues-checkoff in reasonable reliance on *Bethlehem Steel* in cases pending at the time of *Lincoln Lutheran* were never subjected to a remedial order because they necessarily had not violated the NLRA.  Such employers did not and could not include the Employers in this case because we had already determined that, in the absence of a union security clause, their unilateral cessation of dues-checkoff was not governed by *Bethlehem Steel* and their reliance on that decision was unreasonable.  They accordingly had violated the NLRA and we ordered the Board "to determine what relief is warranted."  *LJEB III*, 657 F.3d at 876.

When subsequently deciding this case, the Board noted that its reasons for awarding prospective-only relief were consistent with the reasons it provided in *Lincoln Lutheran* for overruling *Bethlehem Steel* with prospective-only effect.

---

Union was under no obligation to challenge the prospective-only relief that had not yet been ordered by the Board.  The Union then restated its request for make-whole relief in its motion for reconsideration, and argued that the cease-and-desist and notice orders were meaningless for reasons that are equally applicable to the order to bargain and the order to rescind. Finally, when denying that motion, the Board concluded that its entire remedial order was not "meaningless and moot."  Thus, the Union challenged the Board's entire remedial order with "sufficient specificity" to preserve its arguments on appeal.  *NLRB v. Legacy Health Sys.*, 662 F.3d 1124, 1126 (9th Cir. 2011).

There would be nothing inappropriate with such an observation, but for the fact that the Board's main consideration in both cases was the employers' reliance—which, as we have explained, was unreasonable in the absence of a union security clause.

After the Board invoked *Lincoln Lutheran*, it concluded that, "[n]evertheless, [*LJEB III*] . . . makes it necessary to fashion a remedy." The Board then proceeded to fashion a remedy that, in effect, amounted to no relief at all. In doing so, the Board engaged in a "patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the [NLRA]." *Va. Elec. & Power*, 319 U.S. at 540. We urge the Board to move swiftly on remand to award the standard remedy of make-whole relief.[8]

**PETITION GRANTED; ORDER VACATED; REMANDED WITH INSTRUCTIONS. Costs on appeal awarded to Petitioners.**

---

[8] We leave the specific contours of make-whole relief for the Board to determine on remand. Any disputes that arise concerning the calculation or amount of relief should be resolved promptly in compliance proceedings.